**James LYON, James E. Romick, et al., Plaintiffs–Appellants,**

v.

**OHIO EDUCATION ASSOCIATION AND PROFESSIONAL STAFF UNION, Defendants–Appellees.**

No. 93–4072.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 30, 1994.

Decided April 27, 1995.

Theodore E. Meckler (briefed), Meckler & Meckler, Cleveland, OH, Robert S. Bauders (argued and briefed), Law Office of Robert S. Bauders, Cleveland, OH, for James Lyon.

W. Irl Reasoner (briefed), Habash, Reasoner & Frazier, Georgeann G. Peters (argued), Carol T. McClarnon, Baker & Hostetler, Columbus, OH, for Ohio Educ. Ass'n.

Ronald G. Macala (argued), Green, Haines, Sgambati, Murphy & Macala, Canton, OH, Randall Vehar (briefed), Green, Haines, Sgambati, Murphy & Macala, Akron, OH, for Professional Staff Union.

Jennifer S. Goldstein (argued), E.E.O.C., Office of the Gen. Counsel, Washington, DC, for amicus curiae E.E.O.C.

Before: RYAN and BOGGS, Circuit Judges; ROSEN, District Judge.*

BOGGS, Circuit Judge.

The district court granted summary judgment, dismissing a suit challenging an early retirement incentive plan under the Age Discrimination in Employment Act. We now affirm because plaintiffs have not presented a *prima facie* case of age discrimination.

* The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michi-

## I

On December 23, 1992, James Lyon sued his employer, the Ohio Education Association ("OEA"), and his union, the Professional Staff Union ("PSU"). He was later joined by sixteen co-workers (collectively, "plaintiffs"). They alleged that an early retirement provision in the collective bargaining agreement between the defendants violates the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended by the Older Workers Benefit Protection Act of 1990 ("OWBPA"), 29 U.S.C. § 621 *et seq.* The district court granted summary judgment to defendants, and plaintiffs appeal that ruling.

The dispute centers upon a provision for early retirement called "Option B," which appears in the collective bargaining agreement in effect for May 15, 1992, through August 31, 1997. The pertinent language appears in the section of the agreement entitled "Early Retirement Options and Benefits."

> [U]pon the earlier of the completion of twenty (20) years of service or the attainment of age sixty (60) after five (5) years of service, a participant may elect to retire. Early retirement under this Option B may be elected by the participant at any time after the participant meets the eligibility requirement.... *Early retirement benefits under this Option B shall be at least equal to the same percent of salary that the participant would have received if the participant had retired on the normal retirement date.*

§ 12.05 (emphasis added). The agreement also allows "normal" retirement at the earlier of age 62 or 32 years of service (§ 12.04(A)), and calculates an employee's monthly retirement benefit level by multiplying the years of service by 2% of an employee's Average Monthly Compensation ("AMC") (§ 12.08). Employees retiring with at least 20 years of service under normal retirement or Option B are guaranteed a minimum benefit of 50% of AMC and a maximum of 64%. § 12.08(B).

gan, sitting by designation.

Plaintiffs claim that Option B's imputation of service clause [1] (italicized above) violates the ADEA because "younger persons who take an early retirement. receive a higher pension amount than older persons taking a retirement with the same length of service...." *Complaint* at 1–2. In order to equate benefits for early retirees to those under normal retirement, Option B assumes that early retirees had worked until age 62, requiring OEA to impute the necessary years of service to each early retiree based on their present age. If a 56–year–old employee with 21 years of experience selected Option B, the plan treats the employee as if she had worked six additional years: the worker would receive [ (21 years worked) + (62–56) years imputed] × 2% = 54% of AMC. A younger employee with the same experience would receive a larger benefit: a 52–year–old who also had worked 21 years would receive [ (21 years worked) + (62–52) years imputed] × 2% = 62% of AMC. The net effect is to ensure early retirees the same benefits under Option B that they would receive had they continued to work until their normal retirement date.

The district court gave three reasons for granting summary judgment for defendants (because the facts were not in dispute, the only issue to resolve was whether Option B violates the ADEA). First, plaintiffs failed to establish a *prima facie* case of age discrimination based on a disparate-treatment theory because they "do not allege that OEA and PSU intended to discriminate because of age, only that Option B has the effect of discriminating because of age." Second, the court held that defendants were entitled to summary judgment under a disparate-impact theory of discrimination, but it did not explain its reasoning. Instead, the court discussed its third basis for granting summary

judgment—that Option B did not violate the ADEA because it was a lawful early retirement incentive explicitly sanctioned by 29 U.S.C. § 623(f)(2)(B)(ii).[2] Accordingly; the court entered judgment for defendants.

On appeal, plaintiffs challenge three aspects of the district court's order granting summary judgment: they assert that the court improperly held that they had not presented a *prima facie* case of age discrimination, that Option B is not a lawful voluntary retirement incentive under the ADEA, and that the court incorrectly denied their motion for summary judgment.

## II

Because we hold that plaintiffs have failed to advance a *prima facie* case of disparate-treatment or disparate-impact discrimination, we need not address whether Option B is a lawful early retirement provision authorized under the OWBPA.

This court reviews *de novo* the district court's grant of defendants' motion for summary judgment. *Baggs v. Eagle–Picher Industries, Inc.*, 957 F.2d 268, 271 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 466, 121 L.Ed.2d 374 (1992). This court may affirm the district court only if it determines that the pleadings, affidavits, and other submissions show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We agree with the district court that the pertinent facts are not in dispute, and that this appeal requires only that we determine whether Option B violates the ADEA as a matter of law.

## III

Plaintiffs have conceded that "[t]his is not a disparate impact case since Option B, as

1. Option B was first offered in the labor agreement between OEA and PSU in effect September 1, 1984, through August 31, 1987. It was modified in subsequent versions of the collective bargaining agreement, although the imputation of service clause remained unchanged throughout the revisions. The current agreement limits Option B to those hired before May 15, 1992.

2. Congress amended the ADEA via the OWBPA to permit early retirement incentive plans that

are voluntary and consistent with the purposes of the ADEA. The district court specifically observed that "Option B does not discourage the hiring of older workers nor does it stereotype older workers because of their age." Further, the court concluded that the OWBPA's legislative history indicated that "early retirement incentives that impute years of service are legal and do not contradict the purposes of the ADEA."

administered by Defendants–Appellants [sic] is not age neutral," and we shall take them at their word. *Petitioner's Brief* at 8–9. Therefore, the primary issue is whether they have stated a claim of disparate-treatment age discrimination. The Supreme Court has long differentiated between the two theories of discrimination, and the distinction is relevant to plaintiffs' arguments:

> "Disparate treatment" ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment....
>
> Claims of disparate treatment may be distinguished from claims that stress "disparate impact." The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive ... is not required under a disparate-impact theory.

*International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977) (citations omitted).

The Supreme Court recently held in *Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1705, 123 L.Ed.2d 338 (1993), that "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." The Court stressed that the ADEA protects workers only from an employer who intended to discriminate *because of* age:

> [T]he very essence of age discrimination [is] for an older employee to be fired because the employer believes that productivity and competence decline with age. Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes.

*Id.* at ——, 113 S.Ct. at 1706 (citation omitted).

The Court recognized that an ADEA violation does not occur where an employer is motivated by a factor other than age. In *Hazen Paper,* an employee was fired to prevent his pension from vesting. Nonetheless, the Court held that Biggins could not recover for *age discrimination,*[3] since the employee's cost, rather than his age, motivated the firing:

> When the employer's decision *is* wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is.... On average, an older employee has had more years in the work force than a younger employee, and thus may well have accumulated more years of service with a particular employer. Yet an employee's age is analytically distinct from his years of service.... Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily "age-based."

*Id.* at —— —— ——, 113 S.Ct. at 1706–07; *see Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120 (7th Cir.1994) (firing an older worker to eliminate high salary is not ADEA violation); *Beith v. Nitrogen Products, Inc.,* 7 F.3d 701, 703 (8th Cir.1993) ("Because back conditions may be more prevalent in older employees does not alone make the decision an age-based decision."); *Williams v. General Motors Corp.,* 656 F.2d 120, 130 n. 17 (5th Cir.1981) ("[S]eniority and age discrimination are unrelated...."), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982).

Similarly, another panel of this circuit explained the limited scope of the ADEA in *Allen v. Diebold, Inc.:*

> The purpose of the ADEA, according to the Supreme Court, is to protect older workers from being "deprived of employment on the basis of inaccurate and stig-

---

3. The Court affirmed the lower court's holding that the employer violated ERISA.

matizing stereotypes" and to ensure that employers evaluate their employees on the basis of their merits and not their age.

The ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations, downsizing, plant closings and relocations.

33 F.3d 674, 676–77 (6th Cir.1994) (citations omitted).

Consequently, we held that to state a claim under the ADEA, "plaintiffs must allege that [defendant] discriminated against them because they were old, not because they were expensive," *id.* at 677, or any other reason unrelated to age:

> The Court held [in *Hazen Paper* ] that the ADEA prohibits only actions *actually motivated by age* and does not constrain an employer who acts on the basis of other factors—pension status, seniority, wage rate—that are empirically correlated with age. Of course an employer may not use any of these factors as a proxy for age,[4] but *age itself must be the motivating factor behind the employment action in order to constitute an ADEA violation.*

*Allen,* 33 F.3d at 676 (emphasis added).

### IV

Plaintiffs have offered no facts that even hint at an improper motive in drafting or executing Option B by OEA or PSU. There was no evidence that either defendant intended Option B to discriminate against older employees. Nor have plaintiffs alleged that OEA or PSU was aware of a disparate effect on older employees, such that we could infer intent from knowledge. Plaintiffs state

(significantly, in the passive voice) in paragraphs ten and eleven of their complaint:

> [Y]ounger employees who take an early retirement receive a greater pension amount than do older employees who retire with the same length of service.

> The effect of the practices complained of above ... has been to deprive Plaintiff[s] ... of equal employment opportunities and otherwise adversely affect their status as employees because of age, forty (40) or over.

*Complaint* at 4. The absence of any reference to actions *by* OEA or PSU is telling.

Moreover, the very purpose of offering an early retirement *incentive* plan is to "buy out" expensive workers. Early retirement plans enable employers and workers alike to avoid involuntary layoffs by accelerating the pension process, and such plans have proven very popular with labor and management—it is no accident that an early retirement plan was negotiated into the collective bargaining agreement as a "benefit." Therefore, it should be expected that one effect of such a plan is to encourage workers to retire early rather than continue to work. This is precisely what each side bargained for in the labor agreement. The fact that it may, in effect, take a higher benefit to buy out a worker with more to lose (the worker with more time until retirement) does not alter the analysis.

Plaintiffs try to cure their lack of evidence of *intent* by inferring discriminatory animus on the basis of a disparate *effect* on older workers. This is circular, and would render meaningless the carefully-wrought distinction between disparate-impact and disparate-treatment theories of discrimination (intent is not even an element of a *prima facie* case of disparate-impact discrimination).[5] It would

---

4. The Court said in *Hazen Paper:*

> We do not preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination. Pension status may be a proxy for age ... in the sense that the employer may suppose a correlation between the two factors and act accordingly. Nor do we rule out the possibility of dual liability under ERISA and the ADEA where the decision to fire the employee was motivated

both by the employee's age and by his pension status.

— U.S. at ——, 113 S.Ct. at 1707.

5. There is considerable doubt as to whether a claim of age discrimination may exist under a disparate-impact theory, and the Court declined to confront the issue in *Hazen Paper. See* —— U.S. at ——, 113 S.Ct. at 1706 ("we have never decided whether a disparate impact theory of liability is available under the ADEA ... and we need not do so here"); *see also id.* at ——, 113 S.Ct. at 1710 (Kennedy, J., concurring) ("[T]here

also shift the burden of proof in an age discrimination suit to the defendant, contrary to Supreme Court precedent. *See, e.g., St. Mary's Honor Center v. Hicks,* ___ U.S. ___, ___, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (" '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981))).

## V

Even if we accept plaintiffs' contention that an early retirement plan that "has the effect of disadvantaging older workers" is sufficient evidence of discriminatory intent, we find that Option B does not pay older employees lower benefits *because of* age. Clearly, an employee who began work when older will have less time to accumulate years of service, and therefore will receive a lower benefit upon reaching 62, other things being equal; this is true under either early or normal retirement.

For instance, if Employee A is hired at age 30, she can work 32 years before retiring, thus accumulating a 64% benefit. If Employee B is hired at age 40, he can work only 22 years before reaching 62, therefore accruing a 44% benefit. Employee B receives less at retirement because he has worked fewer years.[6] Even if Employee A and Employee B currently have equal years of experience, they are not similarly situated. *Cf. Trenton v. Scott Paper Co.,* 832 F.2d 806, 809–10 (3d.Cir.1987) (noting in dispute over who was

eligible for early retirement plan that "discrimination is the disparate treatment of those who are similarly situated ... [and] [e]mployees at overstaffed and 'lean' plants are not similarly situated"), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988).

Instead, the disparity that plaintiffs find objectionable is a product of their length of service and their age when originally hired by OEA. Thus, any disparity merely reflects the actuarial reality that employees who start work at an early age accumulate more years of service in reaching the normal retirement age of 62 (the OWBPA allows employers to fix a minimum age for early or normal retirement).[7] Since this factor was not being used as a "proxy" for age, it may not be considered evidence of discriminatory animus.

Moreover, the differences in retirement benefits under Option B are identical to the disparity that would exist if young and old employees worked until the normal retirement age. Since plaintiffs do not challenge any aspect of the retirement package other than Option B, that provision can hardly be said to embody a discriminatory motive when the very same "discrimination" exists throughout the pension agreement. Option B does nothing but accelerate *when* a person receives retirement benefits—the amount is no different under Option B than under normal retirement.

## VI

We hold that plaintiffs have failed to carry their burden of showing a *prima facie* case of

---

are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA."); *EEOC v. Francis W. Parker School,* 41 F.3d 1073, 1076–78 (7th Cir.1994). The Court's focus in *Hazen Paper* on Congress's intent to prevent discrimination based on inaccurate and damaging stereotypes suggests that incidental discriminatory effects arising from facially age-neutral policies are not redressable. However, this circuit has stated that a disparate-impact theory of age discrimination may be possible. *See Abbott v. Federal Forge,* 912 F.2d 867 (6th Cir.1990).

6. In fact, OEA's very willingness to ignore ageist stereotypes and hire workers of any age actually appears to have exacerbated plaintiffs' "prob-

lem." Those most "disadvantaged" are those who were oldest at the time of hiring. It would be contrary to the letter, as well as the spirit, of the ADEA to penalize the employer for the incidental ramifications of objectivity.

7. Congress contemplated challenges to early retirement plans in drafting the OWBPA, and it explicitly exempted early retirement plans that were consistent with the goals of the ADEA. The legislative history shows that provisions like Option B were expected, noting that "early retirement incentive plans ... that impute years of service and/or age would continue to remain lawful." S.Rep. No. 263, 101st Cong., 2d Sess. 28 (1990), U.S.Code Cong. & Admin.News 1509.

age discrimination. Therefore, the judgment of the district court is AFFIRMED.