**File Name: 05a0107n.06**

**Filed: February 11, 2005NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**Case No. 03-5870**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **CHARLES MAYO ACREE, et al.,** | ) | |
| | ) | **ON APPEAL FROM THE UNITED** |
| **Plaintiffs-Appellants** | ) | **STATES DISTRICT COURT FOR** |
| | ) | **THE WESTERN DISTRICT OF** |
| **v.** | ) | **KENTUCKY** |
| | ) | |
| **TYSON BEARING CO., INC.,** | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | |

**BEFORE: BOGGS, Chief Judge; GILMAN, Circuit Judge; and SARGUS, District Judge.**[*]

**SARGUS, District Judge.** Plaintiffs, Appellants herein ("Plaintiffs"), appeal from the final judgment of the United States District Court for Western Kentucky at Bowling Green denying their Motion for Judgment as a Matter of Law or, in the alternative, Motion for a New Trial in this age-based discrimination case arising under the Kentucky Civil Rights Act, K.R.S. § 344.040(1). Plaintiffs, forty-nine (49) employees of Defendant-Appellee, Tyson Bearing Corporation, Inc. ("Tyson"), allege that the application of a collectively bargained agreement with the United Steel Workers of America, AFL-CIO, the labor organization representing the employees at Tyson, discriminates against them on the basis of age in violation of the Kentucky Civil Rights Act. Plaintiffs appeal the jury verdict for Tyson in this diversity age discrimination action. For the

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

reasons that follow, the judgment of the district court is **AFFIRMED**.

## I.

Plaintiffs are all hourly employees over the age of 40 who work for Tyson. Each is a recipient of a pension from the former owner of the Tyson facility, SKF, USA, Inc. ("SKF"). Plaintiffs assert that Tyson pays them lower wages and provides them less advantageous vacation benefits than their co-workers because of their protected status as workers over the age of forty (40).

Effective June 11, 1999, Tyson, a corporate entity formed by its parent company, Roller Bearing Corporation of America ("RBC"), purchased the Tapered Bearing Division of SKF at Glasgow, Kentucky. Prior to the time of the purchase, the Tapered Bearing Division of SKF was experiencing financial difficulties. In February 1999, RBC proposed to take over and continue operating the Tapered Bearing Division in the same building that SKF occupied.

Most SKF tapered bearing employees were represented by the United Steelworkers of America, AFL-CIO ("Union"). Accordingly, Tyson negotiated with the Union over the terms and conditions of employment that would apply after the purchase.[1] Tyson negotiated with the Union, as well as suppliers, subcontractors, and salaried employees, in order to secure financial concessions so as to make the acquisition viable. As Tyson and the Union negotiated, Tyson understood that SKF was losing money and that the Tapered Bearing Division was expecting reduced sales volumes on an on-going basis. Tyson therefore anticipated that, after the parties finalized the transaction, it would be forced to reduce the employee roster to 130 from the approximately 260 employees then

---

[1]     Plaintiffs did not join the Union as a party. Tyson filed a third-party complaint against the Union and tried to join it as a party. The district court, however, granted the Union's motion to dismiss the third-party complaint. That issue is not before the Court.

covered by the Union contract.

During the negotiations, Tyson's representative, Mike Gostomski, proposed a $5.00 per hour across the board wage reduction for all employees. The Union rejected this proposal. Instead, the parties developed the idea to allow SKF retirees to work at Tyson as "second tier" employees.[2] Ultimately, the concept of second-tier employees was memorialized in a Memorandum of Agreement. The Memorandum of Agreement provided, in pertinent part:

> It is contemplated . . . that certain members of the bargaining unit, currently employed by SKF, will retire under the SKF Pension Plan, prior to the closing date [June 15, 1999], pursuant to the 30-Year Retirement without actuarial reduction option (including these employees who are eligible to age into such option pursuant to the 1999 amendments to the labor contract) described in a Memorandum of Understanding between SKF and the Union or pursuant to an Early Retirement option with actuarial reduction, based on age 55 or older and at least 10 years of service, and will thereafter confirm to the Company that they are available for immediate employment in a Tyson Bearing Bargaining Unit position at the Tyson Bearing Glasgow facility after the closing date. The parties have agreed that such retirees (hereinafter "retiree-applicants) will be employed by the Company subject to certain terms and conditions that differ from the terms and conditions generally applicable under the labor contract.

(Memorandum of Agreement, at 2; Jx. at 206.) This modification created a class of 79 "retiree-applicants" which included all 49 of the Plaintiffs in this case. The retiree-applicants were to be treated, for compensation purposes, as employees hired after March 31, 1996.[3] This categorization

---

[2]    The parties dispute the issue of who, as between the Union and Tyson, originally presented the idea of a second tier of employees. The district court determined that Plaintiffs had adduced evidence to the effect that Tyson imposed this obligation on the Union on a take-it-or-leave-it-basis and that this dispute about a genuine issue of material fact precluded summary judgment on Plaintiffs' disparate treatment claim.

[3]    In particular, the Memorandum of Agreement indicated that a retiree-applicant " . . . shall be considered to be an employee hired after March 31, 1996, for purposes of Article XIV, Section 3., of the labor contract." (Memorandum of Agreement, Section III, "Retiree-Applicants"; Jx. 195.) Section XIV of the labor contract provided that "[a]ll employees hired after March 31, 1996 will be paid $3.00 per hour, lower than the prevailing wage scale in effect for this labor agreement." (Labor Agreement, Section XIV; Jx. 170.)

3

meant that retiree-applicants would be paid $3.00 less per hour than they had been earning with SKF and that they would receive only two weeks of vacation time.[4] All the retiree-applicants were receiving a pension from SKF when they became employees of Tyson. This class included only workers who had 10 years of service credit with SKF and had attained the age of 55, and employees with at least 30 years of SKF service.[5] Plaintiffs are among the class of employees who affirmatively severed their employment with SKF by retiring before the closing date and were rehired by Tyson after the sale.

The Memorandum of Agreement affected no other class of employees' wages or vacation time.[6] Some employees who were over the age of 40 and eligible for retirement from SKF chose not to do so. These active employees who were over 40 but who did not retire or begin receiving a pension from SKF transferred to Tyson and did not have their pay or vacation benefits reduced.

The Memorandum of Agreement was incorporated into the then-existing labor agreement between SKF and the Union. On June 11, 1999, Tyson assumed the current collective bargaining

---

[4]     The Union also bargained for a number of benefits for the retiree-applicants not otherwise available to individuals hired after March 31, 1996, including the following: (1) they would be assigned to the same position they held at SKF; (2) they would not have to serve another probationary period; (3) they would be eligible for insurance benefits as if they had been employed prior to March 27, 1993; (4) they would maintain their original seniority date from SKF for purposes of layoff, recall, transfers, filling of vacancies, and other such non-economic provisions of the Agreement; (5) they would be entitled to two weeks of vacation and would be eligible for increased vacation if certain production cost levels were reached; (6) they would be entitled to a monthly additional payment of $150 if they opted out of single medical coverage, or $250 if they opted out of married with or without dependents medical insurance coverage; (7) they would be entitled to certain wage increases based on Tyson's production costs in the future; and (8) they would not be required to take a medical examination to qualify for employment.

[5] Although second tier employees made $3.00 less per hour, with the reduced wage, plus their retirement benefit, the parties expected that the group would receive a combined wage and pension benefit that exceeded their former wage level.

[6]     Other employees who started work after March 31, 1996 continued to have only two weeks of vacation and earn $3.00 less per hour than their previously hired counterparts.

agreement negotiated by the Union and SKF and signed the Memorandum of Agreement. Tyson therefore agreed to transfer active SKF employees to its payroll and to employ then-current SKF employees who had retired from SKF prior to the closing date.

After Tyson's takeover, some of the retiree-applicants filed a grievance asserting that the pay and vacation time reduction violated the collective bargaining agreement. The grievance was processed through the initial steps, but did not proceed to arbitration.

Plaintiffs filed a complaint in Kentucky state court on August 29, 2002 alleging age discrimination in violation of the Kentucky Civil Rights Act, K.R.S. § 344.040(1) and (2), asserting both disparate treatment and disparate impact theories of recovery. On October 5, 2001, Tyson removed the lawsuit to the United States District Court for the Western District of Kentucky.

On September 3, 2002, Tyson filed a motion for summary judgment, arguing that Plaintiffs had no proof of intentional discrimination and that Plaintiffs could not state a claim for disparate impact under the age discrimination provisions of the Kentucky Civil Rights Act. Plaintiffs responded and filed a cross-motion for summary judgment, arguing that the facially discriminatory nature of the policy at issue entitled them to summary judgment. The district court denied the parties' motions for summary judgment on January 2, 2003.

Both parties filed motions for reconsideration. Plaintiffs argued that they had submitted sufficient evidence of direct discrimination to justify summary judgment in their favor. Defendant maintained that Plaintiffs had shown insufficient evidence of discriminatory intent to allege a cognizable claim of disparate treatment on the basis of age and that no disparate impact age

5

discrimination cause of action exists under the Kentucky Civil Rights Act.[7] On February 7, 2003, the district court denied Plaintiffs' motion and granted Tyson's motion to the extent it argued that the Kentucky Civil Rights Act does not recognize an age-based discrimination claim under a disparate impact theory of recovery.

The parties proceeded to trial on the issue of disparate treatment. Plaintiffs submitted proposed jury instruction incorporating three theories of liability: (1) disparate impact; (2) disparate treatment based on circumstantial evidence that focused on a *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "pretext" analysis; and (3) disparate treatment based on the facially discriminatory nature of the policy at issue. The district court refused to give a disparate impact instruction and instead gave the following instructions:

> In order to prevail on their claim of age discrimination, the Plaintiffs must prove the following two essential elements by a preponderance of the evidence:
>
> (1)   The Plaintiffs were forty years of age or older; and
>
> (2)   Plaintiffs' age was a motivating factor in the Defendant's decision to enter into the Memorandum of Agreement of June 10, 1999 that reduced Plaintiffs' compensation and benefits.
>
> The term "motivating factor" means a consideration that moved Defendant Tyson Bearing Co. toward its decision. A consideration can be a "motivating factor" without being the only motivation for a particular decision. However, it must have been a factor that actually led to the decision.
>
> The mere fact that Plaintiffs are 40 years of age or older and received reduced pay and benefits is not sufficient, in and of itself, to establish Plaintiffs' claim.

(Instruction 6, Jx. 137.)

The jury returned a verdict in favor of Tyson. Plaintiffs filed post-trial motions requesting

---

[7]   Defendant Tyson also argued that Plaintiffs' claims were preempted by Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185(a). The district court rejected that argument. The issue of preemption, however, is not presently before the Court.

6

judgment as a matter of law, or in the alternative, a new trial. The district court denied Plaintiffs' motions. This appeal followed.

## II.

Plaintiffs assert error in the district court's denial of its (1) motion for summary judgment under Fed. R. Civ. P. 56; (2) motion for judgment as a matter of law (directed verdict) under Fed. R. Civ. P. 50(a); and (3) motion for judgment as a matter of law (notwithstanding the verdict) under Fed. R. Civ. P. 50(b). Plaintiffs also argue that the district court erred in denying its alternative motion for new trial. Finally, Plaintiffs maintain that the district court erred by failing to give certain jury instructions relating to its theories of recovery for age-based discrimination.

"[W]here summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed." *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990); *see also Garrison v. Cassens Transport Co.*, 334 F.3d 528, 537 (6th Cir. 2003) (same). "[I]n cases where an appellant made a Rule 56 motion for summary judgment that was denied, makes those same arguments in a Rule 50(a) motion at the close of evidence that was also denied, lost in front of a jury, then renewed its arguments in a rejected Rule 50(b) motion after the entry of judgment, we will review only the denial of the Rule 50(b) motion." *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 174 (6th Cir. 1996). Because Plaintiffs asserted the same arguments in their Rule 56 motion for summary judgment and both motions for judgment as a matter of law with respect to all issues except those involving their disparate impact theory of liability under the Kentucky Civil Rights Act,[8] the Court reviews only the district court's denial of Plaintiffs' Rule

---

[8] As set forth, *infra*, Plaintiffs allege that the Court should recognize a claim of discrimination under the Kentucky Civil Rights Act using a disparate-impact theory of recovery. Because the district court awarded summary judgment to Tyson on this claim, it was not properly the subject of

7

50(b) motion.

As to Plaintiffs' Rule 50(b) renewed Motion for Judgment as a Matter of Law, the Court reviews the denial *de novo*. *Gray v. Toshiba Am. Consumer Prods*., 263 F.3d 595, 598 (6th Cir. 2001). The Court does not "weigh the evidence, evaluate the credibility of the witnesses, or substitute our judgment for that of the jury." *Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1150, 1152 (6th Cir. 1995). Instead, the Court must view the evidence in the light most favorable to the party against whom the motion is made, giving the non-moving party the benefit of all reasonable inferences. *Garrison*, 334 F.3d at 537 (citing *Phelps v. Yale Sec. Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993)). "The motion should be granted, and the district court reversed, only if reasonable minds could not come to a conclusion other than one favoring the movant." *K & T Enters. Inc*., 97 F.3d at 176; *Garrison*, 334 F.3d at 537-38.

The district court properly denied the motion for a new trial under Rule 50(b) "'if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different conclusion were he [or she] the trier of fact.'" *Powers v. Bayliner Marine Corp*., 83 F.3d 789, 796 (6th Cir. 1996)(quoting *Wayne v. Village of Sebring,* 36 F.3d 517, 525 (6th Cir. 1994)). This Court will reverse a district court's denial of a motion for a new trial only on a showing of abuse of discretion. *Id*. An abuse of discretion is defined as "a definite and firm conviction that the trial court committed a clear error of judgment." *Monette v. AM-7-7 Baking Co*., 929 F.2d 276, 280 (6th Cir. 1991).

The district court dismissed Plaintiffs' claim for age-based discrimination under their

---

any of the trial and post-trial motions. The district court's decision to award summary judgment to Tyson on the disparate impact claim is subject to *de novo* review.

disparate impact theory of recovery and awarded summary judgment to Tyson on this claim. The

standard of review applicable to the district court's decision to grant Tyson's Motion for Summary

Judgment is *de novo*. *Darrah v. City of Oak Park*, 255 F.3d 301, 305 (6th Cir. 2001).[9]

### III.

Plaintiffs claims arise under the Kentucky Civil Rights Act ("KCRA"). The statute provides

that it is unlawful for an employer:

(1)      To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . age forty (40) and over . . .[and]

(2)      To limit, segregate, or classify employees in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect status as an employee, because of the individual's . . . age forty (40) and over . . . .

K.R.S. § 344.040(1) & (2). Kentucky courts typically interpret the age discrimination proscriptions

of the KCRA to mirror the prohibitions set forth in the Age Discrimination in Employment Act of

1967, 29 U.S.C. § 623 *et seq.* ("ADEA"), and hence look to federal cases for guidance in applying

---

[9]      Plaintiffs presented jury instructions relating to their various theories of liability. The district court did not give instructions relating to Plaintiffs' disparate impact claim because it had dismissed that claim on summary judgment. The district court also rejected an instruction on Plaintiffs' claim that the Memorandum of Agreement is direct evidence, in and of itself, of age discrimination. Tyson contends that Plaintiffs waived their objections to the jury instructions by failing to reassert their arguments at the charge conference. Regardless of whether Plaintiffs objected to the jury instructions in this case, Fed. R. Civ. P. 51, which requires a party to object to jury instructions on the record, does not prevent normal appellate review of the underlying merits issues here because Plaintiffs made all necessary arguments to preserve the matters in its appeal with respect to their disparate treatment claim, including whether the Memorandum of Agreement was direct evidence, in its Rule 50 motion for judgment as a matter of law or alternately for a new trial. Similarly, with respect to their disparate impact claim, Plaintiffs preserved their arguments through their appeal of the district court's denial of their Rule 56 motion for summary judgment.

9

the state law.[10]  *Harker v. Federal Land Bank of Louisville, Ky.*, 679 S.W.2d 226, 229 (Ky. 1984).

Generally, a plaintiff may rely upon one of two alternate theories of recovery to establish a claim of illegal discrimination: disparate treatment or disparate impact.  The Supreme Court often distinguishes between the two theories of discrimination and describes the distinction as follows:

> "Disparate treatment" . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin.  Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. . . .
>
> Claims of disparate treatment may be distinguished from claims that stress "disparate impact."  The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.  Proof of discriminatory motive . . . is not required under a disparate-impact theory.

*International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) (citations omitted).

Plaintiffs have invoked both disparate treatment and disparate impact theories in this case. Plaintiffs' ability to recover for age discrimination based on a disparate treatment theory is well-supported in the language of the ADEA and in this Court's precedent.  Plaintiffs' ability to recover

---

[10]    The ADEA provides as follows:

It shall be unlawful for an employer–

(1)    to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2)    to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age . . . .

29 U.S.C. § 623(a)(1) & (2).

10

based upon a disparate impact theory, however, is unsettled in this and other circuits. We turn first to Plaintiffs' contentions under disparate treatment as a theory of recovery and, given the context in which Plaintiffs argue it, decline to rule on Plaintiffs' disparate impact claim.

**A.      Disparate Treatment**

*1.      Direct Evidence*

Plaintiffs maintain that Tyson's retiree-applicant wage and benefit policy, which directed wage and benefit cuts to a group of workers who were all over the age of 40, discriminates on its face against them on the basis of their age. Plaintiffs argue that any policy that by its express terms, applies only to the detriment of members of a protected class is discriminatory on its face. Because a Tyson employee had to be over the age of 40 in order for the wage and benefit reductions to apply, Plaintiffs argue that the policy discriminated against all the members of the group of retiree-applicants on its face.

Plaintiffs argue that the Memorandum of Agreement is direct evidence, in and of itself, of age discrimination, and that they are therefore entitled to judgment as a matter of law on the issue of liability. Plaintiffs rely on *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985), in support of their argument that a discrimination plaintiff need only prove that a facially discriminatory policy exits, and nothing more, in order to prevail on the claim.

In *Thurston*, the airline, TWA, adopted a policy whereby captains who became disqualified from serving as pilots for reasons other than age could remain working and could automatically displace less senior flight engineers. 469 U.S. at 116. Captains who reached the age of 60, however, could not automatically "bump" flight engineers and could remain with the airline only if they had been able to obtain flight engineer status through the bidding procedures outlined in the collective

11

bargaining agreement. If the airline had no vacancy prior to a captain's 60th birthday, or if the captain lacked the requisite seniority to bid on a vacancy, the captain would be retired. *Id.* A captain displaced for any reason besides age did not have to resort to the bidding procedures of the labor agreement. *Id.* at 116-17. The Supreme Court held that the airline's facially discriminatory job-transfer policy violated the ADEA. *Id.* at 128. *Thurston* did not, however, establish the unequivocal principle that an employer's facially discriminatory policy will in every instance and without more entitle an ADEA claimant to judgment as a matter of law. Case law following *Thurston* clarifies the standards of liability under the ADEA.

Plaintiffs misapprehend the nature of direct proof necessary to sustain their claim in a disparate treatment case. In the context of discrimination cases, "direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999); *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (evidence that requires the jury to infer a fact is not direct evidence). Plaintiffs point to no evidence that Tyson deliberately selected them and intended to discriminate against them on the basis of age. Importantly, Plaintiffs voluntarily chose to retire from SKF prior to the takeover by Tyson. Other than pointing to the policy itself, Plaintiffs offer no evidence to suggest that discrimination was at least a motivating factor.

The policy itself does not treat similarly situated individuals differently because of their age. The retiree-applicants are not similarly situated to the employees who did not terminate employment with SKF prior to the closing date. That is, Plaintiffs are distinguishable from those employees who remained active employees and do not receive a pension from SKF. Tyson argues that the financial

12

position of the retiree-applicants actually improved after the sale from SKF, notwithstanding the $3.00 reduction in pay. Those employees who elected to receive the pension ended up with a combined pension and wage rate that exceeded their compensation prior to this sale.

Moreover, in a disparate treatment case, liability depends on whether the protected trait– in this case, age– motivated the adverse employment decision. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). "Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." *Id.* Accordingly, *Hazen Paper* clarified that, under the ADEA, proof of discriminatory motive is critical to the success of a plaintiff's discriminatory treatment claim. *Id.*

This Court has consistently emphasized that a claim of disparate treatment under the ADEA requires proof of discriminatory motive. *See*, *e.g.*, *Allen v. Diebold, Inc.*, 33 F.3d 674, 677 (6th Cir. 1994); *Lyon v. Ohio Educ. Ass'n & Professional Staff Union*, 53 F.3d 135, 138 (6th Cir. 1995); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1048 (6th Cir. 1998).[11] The ADEA prohibits adverse employment action that is actually motivated by age. There is no disparate treatment under the ADEA, however, when an employer acts on the basis of other factors that are only empirically correlated with age, such as pension status, seniority, or wage rate. *Hazen Paper*, 507 U.S. at 609;

---

[11]     Similarly, the Kentucky Civil Rights Act makes it an unlawful practice to discriminate against an individual in the terms or conditions of employment "*because of* the individual's . . . age forty (40) and over . . ." K.R.S. § 344.040(1)(emphasis added); see also K.R.S. § 344.040(2)(noting unlawful employment practice to "limit, segregate, or classify employees . . *because of* the individual's . . . age forty (40) and over . . .")(emphasis added).

13

*Gantt*, 143 F.3d at 1048; *Allen*, 33 F.3d at 677; *Lyon*, 53 F.3d at 138.[12]  Recently, the Supreme Court

emphasized that an employer does not violate the ADEA by acting on the basis of other factors, such

as pension status:

> [In *Hazen Paper*,] . . . we held there is no violation of the ADEA in firing an
> employee because his pension is about to vest, a basis for action that we took to be
> analytically distinct from age, even though it would never occur without advanced
> years. . . We said that "the very essence of age discrimination [is] for an older
> employee to be fired because the employer believes that productivity and
> competence decline with old age,". . . whereas discrimination on the basis of pension
> status "would not constitute discriminatory treatment on the basis of age [because
> t]he prohibited stereotype [of the faltering worker] would not have figured in this
> decision, and the attendant stigma would not ensue . . . ."

*General Dynamics Land Sys., Inc. v. Cline*, 124 S.Ct. 1236, 1244 (2004)(citations omitted).

Tyson argued at trial that it was motivated by financial considerations and that it negotiated

the Memorandum of Agreement in order to make the sale and transfer of SKF, a failing business,

financially feasible.  Plaintiffs recognize that Tyson acted for financial reasons, but assert that Tyson

drew these distinctions based on the affected employees' age and pension status.  Plaintiffs contend

that Tyson itself argued that it distinguished the employees according to their pension status. Tyson

denies that it drew any distinctions based on age or pension status but instead consistently argued

that it was driven solely by financial considerations.

Even if Tyson had been motivated by the retiree-applicants' pension status, that factor is not

---

[12]  The KCRA is similar in this respect and provides that discrimination in wages or
conditions of employment is not unlawful when made on a basis other than age:

> Notwithstanding any other provision of this chapter, it is not an unlawful practice for an
> employer to apply different standards of compensation, or different terms, conditions, or
> privileges of employment pursuant to a bona fide seniority or merit system, . . . *if the
> differences are not the result of an intention to discriminate* because of . . . age forty (40) and
> over . . . .

K.R.S. § 344.100 (emphasis added).

14

an impermissible basis even though it is an empirical correlate with age. Plaintiffs say that the retiree-applicants' pension status was an obvious proxy for their age of 40 and over and that Tyson used pension status as an excuse to discriminate against them on the basis of age. Plaintiffs' argument, however, is not supported by any evidence of record.

A plaintiff is not precluded from pursuing the possibility that an employer "who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination." *Hazen Paper*, 507 U.S. at 612-13. "Pension status may be a proxy for age . . . in the sense that the employer may suppose a correlation between the two factors and act accordingly." *Id*. at 613. Plaintiffs contend that Tyson "*had to* suppose such a correlation. . . because of the *obvious* age-biased parameters (age 55 years or 30 years of company service with SKF) of the 'retiree-applicant' policy." Appellants' Brief, at p. 33 (emphasis in original). This argument either presupposes that there was direct evidence of Tyson's motivation or relies too heavily on Plaintiffs' unsupported theory that the retiree-applicant policy violated the ADEA *per se*. The only evidence Plaintiffs produced that the pay reduction was motivated by discriminatory animus was the adverse *impact* of the policy. While a plaintiff is not precluded from seeking to prove that pension status was a subterfuge for age discrimination, the record here does not contain evidence to support such a contention.

This Court has underscored that "[t]he ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations, downsizing, plant closings and relocations." *Allen*, 33 F.3d at 677. Consequently, the Court has held that to state a claim under the ADEA, "plaintiffs must allege that [defendant] discriminated against them because they were old, not because they were

15

expensive . . . ." *Id.* at 677; *see also EEOC v. American Tel. & Tel. Co.*, 2000 WL 332006, No. 98-4348 (6th Cir. March 22, 2000)(unpublished).  In this case, Plaintiffs have offered no facts or direct evidence that Tyson intended for the retiree-applicant policy to discriminate against the employees on the basis of their protected trait of age.

Under a *de novo* standard of review, the district court therefore did not err is denying Plaintiffs' motion for judgment as a matter of law in this regard.  With respect to Plaintiffs' motion for new trial, the jury in this case reached the conclusion that the Defendant had no intent to discriminate on the basis of age.  This Court may reverse the decision of the district court only if "reasonable minds could not come to a conclusion other than the one favoring the movant [Plaintiffs]." *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996).  After a review of the record, we find that the decision of the district court was not erroneous.

2. *Circumstantial Evidence*

Without direct evidence of discrimination, Plaintiffs must rely on the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), to prove disparate treatment.  Although the Kentucky Supreme Court has not squarely addressed whether the *McDonnell Douglas* burden-shifting analysis applies to age discrimination cases under the KCRA, the parties do not dispute the issue and we will therefore assume that it does.  *Harker,* 679 S.W.2d at 229-30; *Turner v. Pendennis Club*, 19 S.W.3d 117, 119-20 (Ky. App. 2000).

Because "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes," *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983), courts have employed some variant of the framework articulated in *McDonnell Douglas* to analyze claims that

16

are based largely on circumstantial evidence that arises under the ADEA. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000). Under this framework, a plaintiff alleging age discrimination has the initial burden of establishing a prima facie case of intentional discrimination. *Id.* Once the plaintiff establishes a prima facie case of intentional discrimination, the burden of production shifts to the defendant to articulate a nondiscriminatory reason for its actions. *Weigel v. Baptist Hosp. of East Tenn.*., 302 F.2d 367, 377 (6th Cir. 2002). If the employer carries its burden of articulating a nondiscriminatory reason for its decision, the presumption of discrimination that arises from the plaintiff's prima facie case disappears and the plaintiff must show that the defendant's proffered explanation is merely a pretext for discrimination. *Burdine*, 450 U.S. at 255-56. The plaintiff may establish pretext by showing "either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer,* 29 F.3d at 1084 (quotation marks omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," although such a showing might not "always be adequate to sustain a jury's finding of liability." *Reeves,* 530 U.S. at 148. Irrespective of whether Plaintiffs' proof of disparate treatment is direct or circumstantial, the ultimate question regarding liability is the same. Liability depends on whether the protected trait, in this case, age, actually motivated the employer's decision. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 584 (6th Cir. 2003)(citing *Reeves*, 530 U.S. at 141).

The parties do not dispute that Plaintiffs met their initial burden of establishing a prima facie case. The parties focus instead on the element of pretext. Plaintiffs argue that Tyson was unable to articulate a legitimate non-discriminatory reason for enforcing the policy mandated by the

17

Memorandum of Agreement.

Tyson claimed as a nondiscriminatory reason for its action that the wage and vacation benefit reduction was necessary to make its acquisition of an unprofitable and failing commercial enterprise a viable business decision. Tyson further asserts that the Union agreed to the company's plan to limit a reduction in wages to the retiree-applicant class, rather than an across-the-board $5.00 wage reduction for all employees. In this manner, at the end of the day, no employee retained by Tyson was earning less– if pension benefits are included– than that employee earned before the buyout. According to Tyson, this method was designed to prevent a pay cut to any employee, not to discriminate against older workers.

Plaintiffs acknowledge Tyson's stated reason for the retiree-applicant policy was to save money and to permit the plant to stay open, but argue that such cost-savings measures may not be implemented in a discriminatory fashion. Because Plaintiffs argue that the policy was discriminatory on its face as against older workers, Plaintiffs maintain that Tyson's articulated business justification is not "legitimate." Plaintiffs argue that Tyson could have achieved the same cost-savings benefits using other methods, but chose instead to cut wages and vacations benefits of the retiree-applicants.

Plaintiffs, however, may not prove pretext by attacking the soundness of an employment decision. *Hein v. All Am. Plywood Co*., 232 F.3d 482, 490 (6th Cir. 2000); *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 898 (6th Cir. 1997). "An age discrimination action is not 'a device which permits the jury to examine an employer's reasons for discharge and determine that the employer's business judgment or policies do not appeal to its sensibilities.'" *Brocklehurst*, 123 F.3d at 898 (quoting *Elliott v. Group Med. & Surgical Serv*., 714 F.2d 556, 567 (5th Cir. 1983)). Plaintiffs have

18

not shown that Tyson's proffered cost-savings justification had no basis in fact, was not the actual reason motivating the decision to implement the retiree-applicant policy, or that its reason was insufficient to justify the decision. Further, Plaintiffs have not produced any evidence that Tyson's stated reasons for agreeing with the proposal to treat retiree-applicants as new employees – to save money, to make the acquisition viable, and prevent a cut in over-all compensation to each employee – were false.[13] Plaintiffs insist that the policy was discriminatory, but they did not provide more than that assertion in their attempts to persuade the jury that Tyson's stated business justification was a pretext for discrimination.

Plaintiffs argue that they were entitled to judgment as a matter of law on liability, applying the *McDonnell Douglas* framework. Employing the burden shifting model articulated in *McDonnell Douglas* to analyze Plaintiffs' ADEA claims, Plaintiffs failed to show pretext, or that age played a role in the decision-making process relating to the decision to implement the Memorandum of Agreement.

The district court therefore was correct in denying Plaintiffs' motion for judgment as a matter of law and is affirmed. To the extent that Plaintiffs sought a new trial on these issues, the jury's verdict is reasonably supported such that the district court properly denied Plaintiffs' motion for new trial.

## B.    Disparate Impact

Plaintiffs conceded that proof of "pure" disparate impact, without more, "probably does not

---

[13]     Again, the parties dispute whether the Union first proposed the idea of a second tier of employees or if Tyson presented the plan on a take-it-or-leave-it basis. Tyson points to trial testimony indicating that its representatives did not present the idea. (Gostomski Testimony, Jx. 258-62, 302; Bartley Testimony; Jx. at 331). Plaintiffs point to testimony that Tyson representatives first presented the proposal. (Bartley Testimony, Jx. 335-36.) In any event, there is no dispute that the challenged pay structure was agreed upon by the Defendant with the Union.

19

apply to an age discrimination case." (Appellants' Brief, p. 44; Response to Mot. for Summ. Jdgmt., p. 17.)  They argue nonetheless that they were entitled to rely on a disparate impact theory to prove intentional discrimination under a circumstantial proof model.  According to Plaintiffs, the retiree-applicant policy has a *per se* disparate impact upon a protected class.  They argue that, by its very nature, any facially discriminatory policy will have a disparate impact upon the individuals to whom it applies.  Plaintiffs maintain that the district court erred when it did not permit them to present its disparate impact theory to the jury.  The Plaintiffs further contend that the district court failed to include jury instructions relating to this claim.  It appears that Plaintiffs misconstrue the application and contours of a disparate impact claim.

The issue of whether the ADEA contemplates an action on a disparate-impact basis is the subject of intense debate.[14]  The Supreme Court, in fact, recently granted a petition for a *writ of certiorari* to the United States Court of Appeals for the Fifth Circuit to decide whether a disparate impact theory of liability is available under the ADEA.  *Smith v. City of Jackson, Miss.*, 124 S.Ct. 1724 (2004).[15]

As it stands, the Supreme Court in *Hazen Paper*, 507 U.S. 604 (1993), cast considerable doubt on the viability of disparate impact claims in age discrimination cases.  The Court recognized that it had "never decided whether a disparate impact theory of liability is available under the ADEA," and expressly declined to decide the issue on the facts presented in that case.  *Id*. at 610. The Court emphasized, however, that Section 4(a)(2) of the ADEA prohibits an employer from

---

[14]     No Kentucky state court has expressly addressed whether a disparate impact theory of recovery for age-based discrimination is available under the Kentucky Civil Rights Act.

[15]     The Supreme Court had previously agreed to decide the issue in late 2001, but dismissed the case following a brief oral argument indicating that the *writ of certiorari* had been improvidently granted.  *Adams v. Florida Power Co*., 535 U.S. 228 (2002).

20

taking adverse employment actions "because of [an] individual's age." 29 U.S.C. § 623(a)(2). The Court therefore held that the most natural reading of the ADEA compels the conclusion that it prohibits only intentional age-based discrimination. *Id.* The Court noted that "[d]isparate treatment . . . captures the essence of what Congress sought to prohibit in the ADEA." *Id.* Although the Court focused on clarifying the standards for liability under the ADEA in a disparate treatment case, the concurrence noted that "there are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA." *Id.* at 618 (Kennedy J., concurring).

The circuits are divided as to whether disparate impact claims are cognizable under the ADEA. The Second, Eighth, and Ninth Circuits have found that, because the language of the ADEA parallels Title VII of the Civil Rights Act of 1964, disparate impact claims also should be allowed under the ADEA.[16] In contrast, the viability of disparate impact claims under the ADEA have been questioned by the First, Third, Seventh and Tenth Circuits.[17]

This Court has recognized the uncertain availability of a disparate impact claim in age discrimination cases, but has not yet definitely decided the issue. *See Lyon v. Ohio Educ. Ass'n & Prof. Staff Union*, 53 F.3d 135, 139-40 n.5 (6th Cir. 1995)(noting that "[t]here is considerable doubt as to whether a claim of age discrimination may exist under a disparate-impact theory. . . [but ] this circuit has stated that a disparate-impact theory of age discrimination may be possible." (citing *Abbott v. Federal Forge*, 912 F.2d 867 (6th Cir. 1990)); *Gantt v. Wilson Sporting Goods Co.*, 143

---

[16] *Geller v. Markham*, 635 F.2d 1027, 1032 (2d Cir. 1980); *Smith v. City of Des Moines*, 99 F.3d 1466, 1469-70 (8th Cir. 1996); *EEOC. v. Borden's, Inc.*, 724 F.2d 1390, 1394-95 (9th Cir. 1984); *see also Adams v. Florida Power Corporation*, 255 F.3d 1322, 1324 (11th Cir. 2001)(collecting cases).

[17] *Mullin v. Raytheon Co.*, 164 F.3d 696, 700-01 (1st Cir. 1999); *EEOC. v. Francis W. Parker School*, 41 F.3d 1073, 1076-77 (7th Cir. 1994); *Ellis v. United Airlines, Inc.*, 73 F.3d 999, 1006-07 (10th Cir. 1996); *DiBiase v. Smithkline Beecham Corp.*, 48 F.3d 719, 732 (3d Cir. 1995).

21

F.3d 1042, 1048 & n.6 (6th Cir. 1998)("Although we stated in *Abbott v. Federal Forge* . . . that a disparate-impact theory of age discrimination may be possible, we have subsequently noted that in light of the Supreme Court's decision in *Hazen Paper*, . . . there is now 'considerable doubt as to whether a claim of age discrimination may exist under a disparate-impact theory.'" (citations omitted)). Indeed, this Court opined in *Lyon* that the Supreme Court's "focus in *Hazen Paper* on Congress's intent to prevent discrimination based on inaccurate and damaging stereotypes suggests that incidental discriminatory effects arising from facially age-neutral policies are not redressable." *Lyon*, 53 F.3d at 139 n.5.

In the present case, recognizing the differences between Title VII and the ADEA, the admonitions of *Hazen Paper*, and the apparent trend among the courts of appeals to conclude that the ADEA does not support a disparate impact claim, the district court determined that there could be no recovery in this circuit under the ADEA using such a theory. Given the similarities between the ADEA and the KCRA, the district court also declined to allow a disparate impact claim under the state KCRA. The district court therefore awarded summary judgment to Tyson on Plaintiffs' disparate impact claim and subsequently refused to charge the jury on this theory of liability.

Under the circumstances presented here, we need not decide whether this Circuit will condone disparate impact as a viable theory of recovery in an age discrimination case. Plaintiffs concede that a cause of action "probably" does not exist under the ADEA for disparate impact claims. While they argue that the district court should have permitted them to employ a disparate impact theory as a means to recovery, they do not appear to argue that this Court should adopt the theory as viable under the ADEA. Instead, Plaintiffs argue that they have established a case of disparate treatment by virtue of a wage scale that has a disparate impact on older workers. This

22

argument is effectively foreclosed under the disparate treatment analysis above.

Further, this case arises in the context of the Kentucky Civil Rights Act, not the ADEA. The Supreme Court of Kentucky has not spoken on this important matter as it relates to its state law. For these reasons, the Court declines the opportunity to opine any further than it has in the past in *Lyon* and *Gantt* given the facts presented here.

**C.      Evidentiary Issues and Motion for New Trial**

Plaintiffs also assert that the district court erred in admitting certain testimony concerning what Plaintiffs' Union representatives said during negotiations. If a trial court has improperly admitted evidence and a substantial right of a party has been affected, a new trial may be warranted. Generally, the grant or denial of a new trial is purely within the discretion of the trial court and will not be reversed except upon a showing abuse of discretion. *Whittington v. New Jersey Zinc Co.*, 775 F.2d 698, 700 (6th Cir. 1985).

Plaintiffs argue that Tyson should not have been permitted to shift responsibility for its discriminatory conduct to the Union. Before trial, Plaintiffs moved to limit any testimony that would attempt to show that they had waived their rights by being members of a union that had agreed to the policy about which they were complaining. Plaintiffs based their arguments on the district court's reasoning in its Opinion and Order dismissing Tyson's third-party complaint against the Union. The district court did not rule on this motion. Mike Gostomski testified that Joe Villines, a Union representative, had suggested the basic parameters of the retiree-applicant policy. Plaintiffs now assert that the testimony should not have been admitted because it was hearsay.

A district court's evidentiary determinations are subject to an abuse of discretion standard of review. *See United States v. Rios*, 842 F.2d 868, 872 (6th Cir.1988). A district court's

23

conclusions of law, however, such as whether proffered evidence constitutes hearsay within the meaning of the Federal Rules of Evidence, are reviewed *de novo*. *United States v. Levy*, 904 F.2d 1026, 1029 (6th Cir. 1990).

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The district court's determination to admit Mr. Gostomski's testimony that Joe Villines, Staff Representative for the Union, suggested and agreed to the retiree-applicants' portion of the Memorandum of Agreement was proper. First, the statements were admissible non-hearsay used to show Gostomski's state of mind. Whether the retiree-applicant reductions would be agreeable to the Union members is immaterial; the testimony that the Union would not accept the across-the-board reductions, but would allow selective reductions, was not used to prove the truth of the matter asserted, but to show Tyson's state of mind in adopting the proposal.

Second, this statement, having a bearing on the intent underlying Tyson's subsequent conduct, is admissible. *McCormick on Evidence* § 249, 100-01 (5th Ed. 2003). The statements constituted part of the verbal act of contract offer and acceptance of the type that is excluded from the definition of hearsay. *Preferred Properties, Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 798 n.5 (6th Cir. 2002) ("The verbal acts doctrine applies where 'legal consequences flow from the fact that words were said, *e.g.* the words of offer and acceptance which create a contract.'" (quoting Black's Law Dictionary 1558 (6th Ed. 1990))).

Third, even assuming that the statements were otherwise inadmissible hearsay, they would be admissible either as a statement by Plaintiffs' agent concerning a matter within the scope of the agency made during the existence of the relationship, or as a statement by a person authorized by

24

the Plaintiffs to make a statement concerning the subject. Fed. R. Evid. 801(d)(2)(D); Fed. R. Evid. 801(d)(2)(C).

Because the district court correctly ruled that Gostomski's testimony concerning what Plaintiffs' union representative said during negotiations was admissible, Plaintiffs were not entitled to a new trial on that basis. The district court decision in this respect, therefore, is affirmed.

## IV.

For the foregoing reasons, the decision of the district court is **AFFIRMED** in all respects.