*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0397p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
>*Plaintiff-Appellant,*

>*v.*

No. 03-6437

>

JEFFERSON COUNTY SHERIFF'S DEPARTMENT,
KENTUCKY RETIREMENT SYSTEMS, and
COMMONWEALTH OF KENTUCKY,
>*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 99-00500—Jennifer B. Coffman, District Judge.

Argued: July 28, 2005

Decided and Filed: September 19, 2005

Before: ROGERS and SUTTON, Circuit Judges; ROSEN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Eric S. Dreiband, OFFICE OF GENERAL COUNSEL, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant. Robert D. Klausner, KLAUSNER & KAUFMAN, Plantation, Florida, for Appellees. **ON BRIEF:** Eric S. Dreiband, Dori K. Bernstein, OFFICE OF GENERAL COUNSEL, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant. Robert D. Klausner, KLAUSNER & KAUFMAN, Plantation, Florida, Mitchell L. Perry, JEFFERSON COUNTY ATTORNEY'S OFFICE, Louisville, Kentucky, James D. Allen, C. Joseph Beavin, Lizbeth A. Tully, STOLL, KEENON & PARK, Lexington, Kentucky, D. Brent Irvin, OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Appellees.

---

## OPINION

---

ROGERS, Circuit Judge. Plaintiff Equal Employment Opportunity Commission ("EEOC") appeals the district court's dismissal of its case on defendants' motion for summary judgment. The suit is a public enforcement action under the Age Discrimination in Employment Act ("ADEA")

---

[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

against defendants the Kentucky Retirement System, the Jefferson County Sheriff's Office, and the Commonwealth of Kentucky (collectively "Kentucky Retirement"). The EEOC alleges that the defendants operate an employee benefit plan that pays less disability retirement benefits to older employees because of their age in a manner that violates the ADEA. Under our court's holding in *Lyon v. Ohio Education Association and Professional Staff Union*, 53 F.3d 135 (6th Cir. 1995), the Kentucky Retirement System plan does not appear to violate the ADEA. The use of age in the Kentucky Retirement System plan is indistinguishable from the use of age in the early retirement plan at issue in *Lyon*, which was held not to violate the ADEA. The judgment of the district court is therefore affirmed.

## I.

At issue is the retirement plan for certain state and county employees administered by the Kentucky Retirement System. An employee's eligibility is determined by statute. There are three separate systems in the overall retirement plan: the County Employees' Retirement System, the Kentucky Employees Retirement System, and the State Police Retirement System. Ky. Rev. Stat. §§ 16.150, 61.515, 78.520. Members in each system are classified as occupying "hazardous position[s]" or nonhazardous positions. Ky. Rev. Stat. § 61.592. An employee in a hazardous position is eligible to receive normal retirement benefits at age 55, or with twenty years of service, Ky. Rev. Stat. §§ 16.576, 16.577(2), 61.592(4), 78.545(31), whereas an employee in a nonhazardous position is eligible to receive normal retirement benefits at age 65. Ky. Rev. Stat § 61.510(18). The EEOC does not challenge the way in which the plan provides for normal retirement under either system.

For purposes of clarity, Kentucky Retirement and the district court below discussed the application of the retirement plan only to hazardous position employees, as the EEOC's claimant was last employed in a hazardous position. We adopt this practice also.

This case involves the additional provision, under the plan, of *disability* retirement benefits, available to employees who become disabled before they are eligible for normal retirement benefits.[1] The scheme appears to disadvantage older workers by virtue of the fact that a class of workers, determined in significant part by age (actually youth), gets unworked years attributed to them for purposes of calculating the amount of disability retirement. When workers are disabled after they become eligible for normal retirement, they receive only normal retirement benefits. The amount of the yearly benefits is generally calculated as 2.5% of the employee's final compensation times the number of years worked. However, for employees who are not yet eligible for normal retirement (i.e., employees under age 55 and with fewer than 20 years of service), additional years are added to the number of years worked for purposes of the calculation. The number of years added is the number of years remaining until the worker *would have* reached either normal retirement age or twenty years of service, but no more than the number of years already worked.[2] The purpose

---

[1] Two separate versions of the governing statute are at issue. Prior to July 2000, an employee was not eligible to receive disability retirement benefits unless he was "less than normal retirement age." Ky. Rev. Stat. § 16.582(2)(b) (1999), Ky. Rev. Stat. § 61.600(1)(b) (1999). After this litigation began, the provisions were amended, and currently provide that an employee is not eligible for retirement disability benefits if the employee is "eligible for an unreduced retirement allowance." Ky. Rev. Stat. § 16.582(2)(b) (2001) (effective July 14, 2000); *see* 2000 Ky. Acts 385, at *4. Under both versions, an employee who is 55 or older cannot receive disability retirement benefits. In addition, under the current version, an employee who became eligible to receive normal retirement benefits by virtue of having 20 years of service also could not receive disability retirement benefits.

[2] The statute provides:

The disability retirement allowance shall be determined as provided in KRS 16.576, except if the member's total service credit on his last day of paid employment in a regular full-time position is less

appears to be to give a disabled worker the amount of benefit he would have been entitled to had he worked until normal retirement, notwithstanding the fact that he had not actually worked those additional years.

Under this scheme, disability retirement benefits will often be greater than normal retirement benefits for employees with the same years of service (but less than twenty years of service) and the same final compensation. The employee who receives normal retirement benefits will be entitled to 2.5% of his final compensation times his actual service years, whereas the employee who will receive disability retirement benefits will receive the same 2.5% of his final compensation, but will have it multiplied by a number that is higher than his actual years of service, leading to a higher benefit. Moreover, disability benefits will be greater for workers who become entitled to disability retirement at a younger age with the same number of years of service.

A chart prepared by the EEOC shows these discrepancies clearly.

**Kentucky Retirement System Benefit to Hazardous Employee Disabled from Working**

| Age at Disability | Final Pay | # Years Service | Multiplier | Annual Benefits | Monthly Payment |
|---|---|---|---|---|---|
| 55 or older | $50,000 | 10 | 10 | $12,500 | $1,041.66 |
| 53 | $50,000 | 10 | 12 | $15,000 | $1,250.00 |
| 50 | $50,000 | 10 | 15 | $18,750 | $1,562.50 |
| 48 | $50,000 | 10 | 17 | $21,250 | $1,770.83 |
| 45 or younger | $50,000 | 10 | 20 | $25,000 | $2,083.33 |

---

than twenty (20) years, service shall be added beginning with his last date of paid employment and continuing to his fifty-fifth birthday. The maximum service credit added shall not exceed the total service the member had on his last day of paid employment, and the maximum service credit for calculating his retirement allowance, including his total service and service added under this section, shall not exceed twenty (20) years.

Ky. Rev. Stat. § 16.582(5)(a) (Supp. 2004).

For instance, an employee who becomes disabled at age 45 with 10 years of service will be entitled to have his benefits calculated on the basis of 20 years of service, whereas an employee who becomes disabled at age 45 with 7 years of service will be entitled to have his benefits calculated on the basis of 14 years of service.

This text is from a version effective July 13, 2004, which varies only slightly from the prior version. Although the 2004 changes to subsection 5(a) were only cosmetic, an entirely new scheme of calculating disability retirement benefits was added as subsection 5(b) for employees "whose participation begins on or after August 1, 2004."

For a member whose participation begins on or after August 1, 2004, the disability retirement allowance shall be the higher of twenty-five percent (25%) of the member's monthly final rate of pay or the retirement allowance determined in the same manner as for retirement at his normal retirement date with years of service and final compensation being determined as of the date of his disability.

Ky. Rev. Stat. § 16.582(5)(b) (Supp. 2004). The revised version is not at issue here.

This particular dispute between the EEOC and Kentucky Retirement arose out of an EEOC claim filed by Charles Lickteig, formerly a Deputy Sheriff for Jefferson County. In 1995, Lickteig, who was then 61 years old and had 17 years of service, applied for disability retirement benefits from the County Employees' Retirement System. Lickteig was denied disability retirement benefits; the letter informing him of the decision stated that he was ineligible "since you are over age 55." In February 1996, Lickteig filed a charge with the EEOC. The EEOC conducted an investigation over the next two years, ultimately determining that the Kentucky Retirement System violated the ADEA. The EEOC, as required, attempted conciliation, but was not satisfied with Kentucky Retirement's proposed changes. On August 2, 1999, the EEOC filed suit in United States District Court for the Western District of Kentucky, alleging a violation of the ADEA. The defendants filed motions to dismiss, claiming immunity under the Tenth and Eleventh Amendments. The district court denied the motions, and the defendants sought interlocutory appeal to this court. A panel of this court held that the defendants were not entitled to immunity, with one exception. *EEOC v. Kentucky Retirement Systems*, Nos. 005664, 00-6366, 006367, 16 Fed. App'x 443, 453 (6th Cir. Aug. 2, 2001).[3]

On remand, both sides moved for summary judgment. The district court compared the Kentucky Retirement System plan to the early retirement plan in *Lyon v. Ohio Education Association and Professional Staff Union*, 53 F.3d 135 (6th Cir. 1995), and held that the EEOC "has failed to show how this retirement plan's age elements are discriminatory, either facially or through disparate treatment combined with intent." The EEOC filed a timely appeal.

## II.

Affirmance is required because this case is not materially distinguishable from *Lyon v. Ohio Education Association and Professional Staff Union*, 53 F.3d 135 (6th Cir. 1995), in which we upheld an early retirement plan that attributed unworked years to younger workers in order to calculate benefits. At issue in *Lyon* was a retirement plan for employees of the Ohio Education Association ("OEA") that included an early retirement provision, called "Option B." Normal retirement was available to employees who had reached age 62 or had 32 years of service. 53 F.3d at 136. Early retirement was available to employees who had reached age 60 (with 5 years of service) or had 20 years of service. *Id.* Normal retirement benefits were calculated much as they are under the Kentucky Retirement System plan—an employee's years of service were multiplied by a fixed percentage of the employee's "average monthly compensation." *Id.* Early retirement benefits under Option B were also calculated much as disability retirement benefits are calculated under the Kentucky Retirement System plan—additional years of service were added to actual years of service so that it was as if the employee had worked until age 62. *Id.* For example, an employee who retired at age 56 with 21 years of service would receive credit for 27 years. *Id.* at 137. Just as in the Kentucky Retirement System plan, therefore, as between an older employee who retires under the normal retirement plan, and a younger employee who retires under early retirement plan with the identical years of actual service and the same average monthly compensation, the older employee will receive less retirement benefits than the younger person. This court ultimately concluded "that plaintiffs have failed to advance a *prima facie* case of disparate-treatment or disparate-impact discrimination" and upheld the plan. *Id.*

This court in *Lyon* first explained the difference between disparate treatment and disparate impact.

---

[3] This court held that Kentucky was entitled to immunity under the Tenth Amendment with respect to the EEOC's attempt to seek a mandate that Kentucky enact permanent legislation. 16 Fed. App'x at 453.

"'Disparate treatment' . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. . . .

Claims of disparate treatment may be distinguished from claims that stress 'disparate impact.' The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive . . . is not required under a disparate-impact theory."

*Id.* at 138 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) (citations omitted)). This court next turned to the most on-point Supreme Court decision, *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). *See Lyon*, 53 F.3d at 138. The plaintiff in that case, Biggins, had been fired at age 62, several weeks before his pension benefits would have vested. 507 U.S. at 607. The Supreme Court was thus faced with the issue of "whether an employer violates the ADEA by acting on the basis of a factor, such as an employee's pension status or seniority, that is empirically correlated with age." *Id.* at 608. The Court, in holding that there was no discrimination, noted that "[i]n a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Id.* at 610. Accordingly, "[w]hatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." *Id.*

The *Lyon* court concluded that, under the reasoning of *Hazen Paper*, "the ADEA protects workers only from an employer who intended discrimination *because of* age." *Lyon*, 53 F.3d at 138.

"[T]he very essence of age discrimination [is] for an older employee to be fired because the employer believes that productivity and competence decline with age. [. . . ] Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes."

*Lyon*, 53 F.3d at 138 (quoting *Hazen Paper Co.*, 507 U.S. at 610 (citation omitted)). The *Lyon* court reasoned that the plaintiffs challenging Option B had not met the burden of showing intentional discrimination because of age.

Plaintiffs have offered no facts that even hint at an improper motive in drafting or executing Option B by OEA or PSU. There was no evidence that either defendant intended Option B to discriminate against older employees. Nor have plaintiffs alleged that OEA or PSU was aware of a disparate effect on older employees, such that we could infer intent from knowledge. Plaintiffs state . . . in paragraphs ten and eleven of their complaint:

[Y]ounger employees who take an early retirement receive a greater pension amount than do older employees who retire with the same length of service.

The effect of the practices complained of above ... has been to deprive Plaintiff[s] . . . of equal employment opportunities and otherwise adversely affect their status as employees because of age, forty (40) or over.

Complaint at 4. The absence of any reference to actions by OEA or PSU is telling.

*Lyon*, 53 F.3d at 139.

This court next rejected what it characterized as the plaintiffs' efforts "to cure their lack of evidence of *intent* by inferring discriminatory animus on the basis of the disparate *effect* on older workers." *Id.* First, the court noted that if a plaintiff were permitted to use disparate effect to prove intent, the distinction between the disparate treatment and disparate impact theories of discrimination would be meaningless. *Id.* at 139-40. Second, this court in *Lyon* concluded that in fact Plan B did not have the effect of disadvantaging older workers *because of* age.

> Clearly, an employee who began work when older will have less time to accumulate years of service, and therefore will receive a lower benefit upon reaching 62, other things being equal; this is true under either early or normal retirement. . . . [T]he disparity that plaintiffs find objectionable is a product of their length of service and their age when originally hired by OEA. Thus, any disparity merely reflects the actuarial reality that employees who start work at an early age accumulate more years of service in reaching the normal retirement age of 62 . . . .

*Id*. at 140. Ultimately, therefore, this court in *Lyon* concluded that the plaintiffs had failed to demonstrate a *prima facie* case of age discrimination, and affirmed the dismissal of their case. *Id.* at 140-41.

Because the retirement plan at issue in this case is materially indistinguishable from the early retirement incentive plan in *Lyon*, the Kentucky Retirement plan cannot be held to violate the ADEA. Under both plans, certain younger employees (those below the standard retirement age) are eligible to receive credit for additional years of service that they did not in fact work, with the result that a younger employee receives greater retirement benefits than an older employee with the identical final or average salary and years of actual service. Although this case involves disability retirement benefits and *Lyon* involved early retirement benefits, that difference is not material.[4] Under *Lyon*, therefore, the EEOC has failed to demonstrate discriminatory intent, and Kentucky Retirement was entitled to summary judgment.

It is arguable that the application of the ADEA to benefit plans should be distinguished from the application of the ADEA to individual firings of the type at issue in *Hazen Paper*. Intent arguably should be inferred from the employer's knowledge concerning its own plan. Such an argument is, however, foreclosed by *Lyon*. The OEA retirement plan in *Lyon* explicitly used age to calculate benefits. Employees who retired before reaching age 62 received credit for the years remaining before age 62. Employees over age 62 were not entitled to credit years. Accordingly, there was disparate treatment because of age. This court commented in *Lyon* that "the absence of any reference to action *by* OEA or PSU is telling," 53 F.3d at 139, even though the only action that will ever be taken in cases involving retirement plans—as opposed to individual adverse actions—is the action of writing the policy.

This court in *Lyon* could also perhaps be criticized for its reliance on the observation that "the very purpose of offering an early retirement *incentive* plan is to 'buy out' expensive workers." *Id.* Under a disparate treatment analysis, the presence of a justification for age discrimination does not, *ipso facto*, make that type of discrimination not actionable. Indeed, Congress's intent in

---

[4]Although a statutory exemption to the ADEA addresses early retirement incentive plans, *Lyon* explicitly declined to consider whether the exemption applied in that case. 53 F.3d at 137. At oral argument the EEOC repeatedly declined to argue that the *Lyon* result could be considered warranted by the statutory exception for early retirement incentive plans.

enacting the Older Workers Benefit Protection Act ("OWBPA"), which amended the ADEA, appears to have been to make schemes such as the Kentucky Retirement System plan unlawful unless cost-justified. For instance, during the final debate on the Act, Rep. Roukema remarked as follows:

> The purpose of this legislation is to ensure that older workers do not receive less benefits than younger workers. . . . [T]he bill provides that workers who are on disability cannot be forced to receive only their pension at retirement age. Under this bill, they will receive the difference between what is typically a lower pension benefit and the higher disability benefit. The end result is that older workers will not find themselves penalized by virtue of their age and pension eligibility when it comes to receiving benefits.

136 Cong. Rec. H8614-02. Furthermore, the OWBPA was passed to overrule *Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158 (1989), which involved a retirement plan similar in many respects to the Kentucky Retirement System plan. The Public Employees Retirement System of Ohio ("PERS") provided both normal retirement benefits and disability retirement benefits, and, as is true for the Kentucky Retirement System plan, an employee who had reached retirement age was ineligible for disability benefits. 492 U.S. at 162. The PERS system employed a different method of calculating benefits, but with a similar result: disability benefits were guaranteed to be no less than 30% of the disabled employee's final salary, whereas regular retirement benefits were not guaranteed. *Id.* at 163. In the case of the plaintiff Betts, who became disabled at age 61, one year after the 60-year retirement age, disability benefits would have been approximately double the amount of normal retirement benefits. *Id.* The Supreme Court did recognize that the PERS plan was facially discriminatory because it "renders covered employees ineligible for disability retirement once they have attained age 60," *id.* at 166, but concluded that an exception applied. The exception, section 4(f)(2) of the ADEA, 29 U.S.C. § 623(f)(2) (1988), provided that notwithstanding the general prohibition on the use of age to determine benefits, it was not unlawful for an employer

> to observe the terms of . . . any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such . . . employee benefit plan shall require or permit the involuntary retirement of any individual . . . because of the age of such individual.

29 U.S.C. § 623(f)(2)(1988); *see Betts*, 492 U.S. at 165-66. The remainder of the case was devoted to establishing the definition of "subterfuge," with the Court ultimately concluding that under the subterfuge provision, "the employee bears the burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discriminating in some non-fringe-benefit aspect of the employment relation." *Id.* at 181. In short, the PERS plan would not be held to violate the ADEA, despite the fact that it based benefits on age, unless the plaintiff proved subterfuge.

Congress did not agree with the Supreme Court's interpretation of the ADEA, and accordingly, enacted the OWPBA to overrule *Betts*.

> The Congress finds that, as a result of the decision of the Supreme Court in *Public Employees Retirement System of Ohio v. Betts*, 109 S.Ct. 256 (1989), legislative action is necessary to restore the original congressional intent in passing and amending the Age Discrimination in Employment Act of 1967 (29 U.S.C. 621 et seq.), which was to prohibit discrimination against older workers in all employee benefits except when age-based reductions in employee benefit plans are justified by significant cost considerations.

Older Workers Benefit Protection Act, Pub. L. No. 101-433, 104 Stat. 978 (1990) (codified at 29 U.S.C. § 621). Congress thought that the plan in *Betts* violated the ADEA, unless it was cost-justified as provided for in a new, codified exception. The cost-justified exception is not now at issue in this case—Kentucky Retirement has argued that its plan is cost-justified, but the district court declined to address the defense. The plan at issue in *Betts* rendered employees who had reached age 60 ineligible to receive disability benefits. The plan in this case, under the pre-2000 version, made employees who had reached age 55 ineligible to receive disability benefits. The post-2000 version is only one step removed from being in relevant respects identical: it limits the scope of the age discriminatory scheme to the pool of workers who have fewer than 20 years of service. If Congress thought that the plan in *Betts* violated the ADEA, then it could be argued that Congress would think that the Kentucky Retirement Systems plan violates the ADEA. The legislative history of the OWPBA was, however, available at the time that *Lyon* was decided, and therefore does not distinguish this case from *Lyon*.

Although the difficulties with the *Lyon* rationale and holding might warrant a different result in this case were the *Lyon* case not controlling in this circuit, such a different result would also have its troubling aspects. In *Lyon* the court identified an acceptable employer policy of paying more to buy out employees who were likely to stay on longer and thus cost the company more to keep on. If such a policy is acceptable under the ADEA, it follows that a policy of insuring against the employee's involuntary loss of such value is also acceptable. Assuming that each worker desires to accumulate a working-life's worth of retirement benefits, an employer might reasonably want to provide employees with assurance that such a "working life's worth" will be accumulated, against the risk that the employee will become disabled during his or her period of employment. At oral argument, EEOC counsel was unable to articulate how, absent a scheme like Kentucky's, such a benefit could be provided without violating the ADEA.

### III.

Because the use of age in the Kentucky Retirement System plan is indistinguishable from the use of age in the early retirement plan at issue in *Lyon*, the Kentucky Retirement System plan does not violate the ADEA. The judgment of the district court granting summary judgment in favor of Kentucky Retirement is affirmed.