MOORE, J., delivered the opinion of the court, in which MARTIN, DAUGHTREY, COLE, CLAY, GIBBONS, SUTTON, COOK, and GRIFFIN, JJ., joined. ROGERS, J. (p. 583), delivered a separate opinion concurring in the result. BOGGS, C. J. (pp. 583-90), delivered a separate dissenting opinion, in which BATCHELDER, GILMAN, and McKeague, JJ., joined.
MOORE, Circuit Judge.
Plaintiff-Appellant the Equal Employment Opportunity Commission (“EEOC”) brings this public-enforcement age-discrimination lawsuit against Defendants-Appellees the Jefferson County Sheriffs Department, the Kentucky Retirement Systems, and the Commonwealth of Kentucky (referred to collectively as “KRS”), alleging that KRS’s disability-retirement-benefits plan for state and county employees violates the Age Discrimination in Employment Act (“ADEA”), 29 U.S.C. § § 621 et seq., as amended by the Older Workers Benefit Protection Act (“OWB-PA”), Pub. Law 101-433, 104 Stat. 978 (1990). The KRS disability-retirement-benefits plan (hereinafter “The KRS plan”) disqualifies employees who are still working from receiving disability-retirement benefits if they have already reached normal retirement-benefit age at the time they become disabled. The KRS plan also calculates disability-retirement benefits in such a way that an older employee who is eligible to receive disability benefits receives fewer benefits — in the form of lower monthly benefit payments — than a younger disabled employee receiving disability-retirement benefits who is similar to the older disabled employee in every relevant factor other than age.
Both the district court and the original panel of this court concluded that pursuant to Lyon v. Ohio Education Association and Professional Staff Union, 53 F.3d 135 (6th Cir.1995), the EEOC had failed to establish a prima facie violation of the ADEA. Lyon concluded that a retirement plan that used age as a factor to determine benefits in a materially indistinguishable manner to the way that age is used in the KRS plan did not establish a prima facie violation of the ADEA despite the fact that older workers received lower benefits because of their age. Lyon held that in *573 addition to demonstrating disparate treatment on the basis of age, a plaintiff needed to produce evidence of discriminatory animus against older people in order to survive the employer’s summary-judgment motion.
After reviewing the parties’ arguments and the relevant law, we conclude that the EEOC has established a prima facie violation of the ADEA, because the KRS plan is facially discriminatory on the basis of age. Supreme Court authority on disparate-treatment-discrimination claims as well as the persuasive authority of many of the other circuits and the history of the ADEA (as amended by the OWBPA) demonstrate that KRS is not entitled to summary judgment. We further hold that when an employment policy or benefit plan such as the KRS plan is facially discriminatory, a plaintiff challenging that policy does not need additional proof of discriminatory animus in order to establish a pri-ma facie disparate-treatment claim. Upon en banc review, we conclude that Lyon’s standard for a disparate-treatment age-discrimination claim is inconsistent with Supreme Court authority as well as the rulings of several of our sister circuits in cases involving the similar role of age in employee-benefit plans. We therefore overrule in part our previous decision in Lyon.
Because we conclude that the EEOC has established a prima facie claim of age discrimination, we REVERSE the district court’s grant of summary judgment to KRS on the EEOC’s age-discrimination claim and REMAND the case to the district court for further proceedings consistent with this opinion.
I. BACKGROUND
The dispute that led to this lawsuit began when Charles Lickteig, who was at the time a Deputy Sheriff with the Jefferson County Sheriffs Department, was denied disability-retirement benefits under the KRS plan because of his age. Because Lickteig’s job as a Deputy Sheriff was considered hazardous, Lickteig became eligible for normal retirement benefits at age 55,[1] but he chose to continue working past that date because he had school-age children to support. Joint Appendix (“J.A.”) at 49 (Lickteig Aff. ¶ 11). In 1995, Lick-teig, who had worked as a Deputy Sheriff since 1978, became disabled due to “a deteriorating vertebra[ ], arthritis, nerve damage, and Parkinson’s disease” to the point that he could no longer perform his Deputy Sheriff duties. J.A. at 48 (Lickteig Aff. ¶¶4, 6). In July 1995, at age sixty-one and with seventeen years and seven months worth of service, Lickteig applied for disability-retirement benefits under the KRS plan. J.A. at 42 (William Hanes Aff. ¶ 3); J.A. at 49 (Lickteig Aff. ¶ 7). In a letter dated August 25, 1995, defendants notified Lickteig that his request for disability-retirement benefits had been denied because of his age. In its denial letter, KRS explained:
Our laws state that you must have at least 60 months of service credit, be under age 55, and apply within 12 months of your last day of paid employment in a regular full-time position to qualify for Disability Retirement. *574 Therefore, you are not eligible to apply for Disability Retirement since you are over age 55 and in a hazardous position.
J.A. at 51 (Lickteig Denial Letter). As a result of the denial of his request for disability-retirement benefits, Lickteig filed a charge of discrimination with the EEOC in February 1996, alleging that defendants illegally denied him the benefits because of his age. J.A. at 57-59 (EEOC Charges). The EEOC began investigating Lickteig’s charges and eventually concluded that the KRS plan violated the ADEA.
The material aspects of the KRS plan are as follows. First, the KRS plan provides two types of retirement benefits— normal retirement benefits and disability-retirement benefits. Employees like Lick-teig who work in hazardous positions are eligible for normal retirement benefits at age fifty-five or after completing twenty years of service, whereas an employee working in a nonhazardous position is eligible for normal retirement benefits at age sixty-five. The EEOC is not challenging the KRS plan provisions for normal retirement benefits for either class of employees, but rather only the plan’s provision of disability-retirement benefits. As Lickteig is a hazardous-category employee, the district court and the original hearing panel of our court analyzed only the disability-retirement plan’s impact upon employees in hazardous positions, and we do the same. We note, however, that our holding is equally applicable to KRS’s treatment of employees in nonhazardous positions to the extent that the disability-retirement plan utilizes age in a materially indistinguishable way in the provision of disability-retirement benefits to employees in nonhazardous positions.
The EEOC argues that the KRS plan’s provisions of disability-retirement benefits violates the ADEA because the plan “denies benefits or pays reduced benefits, because of age.” J.A. at 21 (Compl. at .1). As the original hearing panel of our court explained:
The [KRS disability-retirement benefits] scheme appears to disadvantage older workers by virtue of the fact that a class of workers, determined in significant part by age (actually youth), gets un-worked years attributed to them for purposes of calculating the amount of disability retirement. When workers are disabled after they become eligible for normal retirement, they receive only normal retirement benefits. The amount of the yearly benefits is generally calculated as 2.5% of the employee’s final compensation times the number of years worked. However, for employees who are not yet eligible for normal retirement (i.e., employees under age 55 and with fewer than 20 years of service), additional years are added to the number of years worked for purposes of the calculation [of disability-retirement benefits]. The number of years added is the number of years remaining until the worker would have reached either normal retirement age or twenty years of service, but no more than the number of years already worked. The purpose appears to be to give a disabled worker the amount of benefit he would have been entitled to had he worked until normal retirement, notwithstanding the fact that he had not actually worked those additional years.
Under this scheme, disability retirement benefits will often be greater than normal retirement benefits for employees with the same years of service (but less than twenty years of service) and the same final compensation. The employee who receives normal retirement benefits will be entitled to 2.5% of his final compensation times his actual service years, whereas the employee who *575 will receive disability retirement benefits will receive the same 2.5% of his final compensation, but will have it multiplied by a number that is higher than his actual years of service, leading to a higher benefit. Moreover, disability benefits will be greater for workers who become entitled to disability retirement at a younger age with the same number of years of service.
EEOC v. Jefferson County Sheriffs Dep’t, 424 F.3d 467, 469-70 (6th Cir.2005) (footnotes omitted), vacated on grant of reh’g en banc (2006).
In addition, a hazardous-category employee eligible for the disability-retirement-benefit plan who is injured in the line of duty is guaranteed monthly benefits of at least 25% of monthly final rate of pay, and if the employee has dependent children, she receives a dependent-child benefit of 10% of monthly final rate of pay for each child, up to a maximum for all dependent children of 40% of monthly final rate of pay. Ky. Rev. Stat. Ann. § 16.582(6). The parties do not dispute that an otherwise-identical employee who becomes disabled in the line of duty but because of her age at the time of disability is ineligible for disability-retirement benefits could not receive these additional dependent benefits.
The EEOC has provided charts demonstrating the impact of an employee’s age on her disability-retirement-benefit amount in its brief. EEOC Br. at 14, 16. These charts illustrate, and defendants do not dispute, that:
assuming every factor, other than age, that is relevant to determine an employee’s benefits (i.e., type of position, disabling condition, final compensation, and length of service) is identical, the amount paid annually to a worker who retires on disability at a younger age will frequently exceed (and will never be less than) the annual benefits of a worker who retires due to disability at an older age.
EEOC Br. at 16-17. Additionally, the EEOC argues, and defendants do not dispute, that:
In every case, a worker younger than normal retirement age (55/65) who retires on disability will receive more benefits each year than an older employee who retires from the same job, with the same disabling condition, length of service, and final compensation, who becomes disabled after reaching 55/65 and must take normal retirement.
EEOC Br. at 16.
The EEOC challenges both the 1998 and the 2000 versions of the Kentucky statute governing the KRS plan.[2] See EEOC Br. at 7-8 (explaining challenged aspects of both the pre-2000 and 2000 versions of the KRS plan); id. at A-2 (excerpting portions of the pre-2000 and 2000 versions of the statute). The original panel explained the key differences between the 1998 and 2000 versions of the statute:
Prior to July 2000, an employee was not eligible to receive disability retirement benefits unless he was “less than normal retirement age.” Ky.Rev.Stat. *576 § 16.582(2)(b) (1999), Ky.Rev.Stat. § 61.600(l)(b) (1999). After this litigation began, the provisions were amended, and currently provide that an employee is not eligible for retirement disability benefits if the employee is “eligible for an unreduced retirement allowance.” Ky.Rev.Stat. § 16.582(2)(b) (2001) (effective July 14, 2000); see 2000 Ky. Acts 385, at *4. Under both versions, an employee who is 55 or older cannot receive disability retirement benefits. In addition, under the current version, an employee who became eligible to receive normal retirement benefits by virtue of having 20 years of service also could not receive disability retirement benefits.
EEOC v. Jefferson County, 424 F.3d at 469 n. 1. The EEOC explains that it is not challenging the exclusion of this latter group of employees' — those rendered ineligible for disability-retirement benefits because of their years of service, rather than their age. The EEOC only “seeks relief for individuals who, because of age, were excluded from disability retirement, or applied for disability retirement and have received fewer annual benefits, since October 16, 1992,” which is the enactment date of the OWBPA. EEOC Reply Br. at 27; see also EEOC Br. at 34.
In the fall of 1998, the EEOC and KRS attempted to conciliate this dispute, but the parties could not reach an agreement. J.A. at 60-62 (Marcia Hall-Craig Aff.). On August 2, 1999, the EEOC filed this lawsuit in the United States District Court for the Western District of Kentucky, alleging that the KRS plan illegally discriminates on the basis of age in violation of the ADEA. J.A. at 21-23 (Compl.lffl 1-12). KRS filed a motion to dismiss the suit on Tenth and Eleventh Amendment immunity grounds. After the district court denied defendants’ motion to dismiss, a panel of our court affirmed that decision, holding that, with one exception, the Tenth and Eleventh Amendments do not shield KRS from the EEOC’s age-discrimination suit. EEOC v. Ky. Ret. Sys., 16 Fed.Appx. 443, 453 (6th Cir.2001). After the case was remanded to the district court, both the EEOC and KRS moved for summary judgment. The district court granted summary judgment for defendants, concluding that pursuant to our reasoning in Lyon, discriminatory intent was necessary to establish a prima facie case of age discrimination in a disparate-treatment claim. J.A. at 32-33 (Dist. Ct. Op. at 4-5). The district court recognized that intent could be inferred from a facially discriminatory policy, but found that the KRS plan was not facially discriminatory, and thus concluded that the EEOC had not alleged a valid disparate-treatment ADEA claim. The EEOC filed a timely notice of appeal.
Although suggesting concerns regarding the soundness of Lyon’s reasoning, the original hearing panel of our court deemed itself bound by the Lyon decision and affirmed, holding that “[bjecause the retirement plan at issue in this case is materially indistinguishable from the early retirement incentive plan [held to be consistent with the ADEA] in Lyon, the Kentucky Retirement plan cannot be held to violate the ADEA.” EEOC v. Jefferson County, 424 F.3d at 473. The EEOC petitioned for rehearing en banc, arguing that the KRS plan is facially discriminatory, and that the Commission has therefore established a prima facie claim of age discrimination. The EEOC also urges us to overrule Lyon to the extent that Lyon holds that a plaintiff challenging a facially discriminatory employment policy must have proof that the policy was motivated by discriminatory animus against older workers in order to state a prima facie violation of the ADEA.
II. ANALYSIS
We begin with a discussion of the origins of the ADEA, as the history of the Act *577 informs our analysis of the issues raised in this case. Congress considered including age as a protected class when it was debating and drafting Title VII of the Civil Rights Act of 1964, but declined to do so because of concerns that employers might sometimes have a legitimate basis for making age-related employment decisions. Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 587-88, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004). In order to determine whether Congressional action to address age discrimination was necessary and to understand better what type of legislation might remedy the existing problems, Congress requested that then-Secretary of Labor Willard Wirtz conduct “a full and complete study of the factors which might tend to result in discrimination in employment because of age and of the consequences of such discrimination on the economy and individuals affected.” Smith v. City of Jackson, 544 U.S. 228, 232, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005) (quoting Title VII of the Civil Rights Act of 1964, Pub.L. No. 88-352, § 715, 78 Stat. 265 (1964)).
The Secretary of Labor’s report, submitted to Congress in June 1965, concluded that age discrimination was sufficiently widespread that it warranted public concern, but that the nature of age discrimination was quite different from discrimination based upon the classes protected by Title VII. U.S. Secretary Of Labor, The Older American Worker: Age Discrimination In Employment 5-6 (June 1965), reprinted in U.S. Equal Employment Opportunity Commission, Legislative History Of The Age Discrimination In Employment Act 22-23 (1981) (hereinafter ‘Wirtz Report”). “Because the ADEA was modeled on the Wirtz Report’s findings and recommendations, the Report provides critical insights into the statute’s meaning.” Smith, 544 U.S. at 254, 125 S.Ct. 1536 (O’Connor, J., concurring in the judgment). The Wirtz Report concluded “that there was little discrimination arising from dislike or intolerance of older people, but that ‘arbitrary’ discrimination did result from certain age limits.” Id. at 232, 125 S.Ct. 1536 (majority opinion). The Report stated that it had “found no evidence of prejudice based on dislike or intolerance of the older worker,” and that “intolerance, of such overriding importance in the case of attitudes toward other groups, assumes minimal importance in the case of older people and older workers.” Wirtz Report at 6. Despite finding a lack of discriminatory animus against older people, Secretary Wirtz found “substantial evidence of arbitrary” age discrimination. Id. at 5. Secretary Wirtz defined arbitrary[3] age discrimination as “assumptions about the effect of age on [an employee’s] ability to do a job when there is in fact no basis for these assumptions.” Id. at 2. The Report explains that a common form of arbitrary age discrimination at that time was the refusal of employers to hire individuals for positions once they had reached a certain age, without any actual relevance to the *578 particular position’s job requirements. Id. at 6-8.
The Wirtz Report inspired Congress to request that the Secretary draft proposed legislation to combat age discrimination, and after that was completed, Congress “acted favorably on his proposal” and enacted the ADEA. Smith, 544 U.S. at 232-33, 125 S.Ct. 1536. In 1967, Congress enacted the ADEA, which now renders it “unlawful for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s age;” as well as “(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual’s age.” 29 U.S.C. § 623(a)(1)-®).
In this case, the EEOC urges us to conclude that it has established a prima facie claim of age discrimination because the KRS plan facially discriminates against older employees in two ways: (1) the KRS plan renders employees ineligible for disability-retirement benefits simply because of their age, which means that disabled workers who are ineligible for disability benefits because of their age receive lower (normal) retirement benefits than otherwise-similar younger workers who become disabled and are able to receive the greater disability-retirement benefits, and (2) the KRS plan uses an employee’s age in order to calculate disability-retirement benefits in such a way that an older eligible employee receives lower monthly disability-benefit payments than an otherwise-similar younger disabled worker.
Defendants argue that, contrary to the EEOC’s assertion, the KRS plan does not violate the ADEA because the policy does not discriminate “because of age.” KRS Br. at 10. Rather, defendants argue, the KRS plan merely uses age as one of several factors to determine benefits, in the same way that age is a factor in many, if not most, retirement-benefit plans. See KRS Br. at 13. Defendants also assert that a valid disparate-treatment claim requires a plaintiff to establish proof of discriminatory motive, and that “[tjhere is no evidence that the [KRS plan] framework established to provide benefits to disabled members of Kentucky Retirement was in any fashion age-driven.” KRS Br. at 26-27.
We consider first the EEOC’s argument that it has established a prima facie ADEA claim because the KRS disability-retirement-benefits plan is facially discriminatory. We then assess KRS’s argument that even if the KRS plan is facially discriminatory, the EEOC must produce evidence that the plan was motivated by discriminatory animus against older people in order to sustain its prima facie burden.
A. The EEOC Has Established a Prima Facie ADEA Claim Because the KRS Plan Facially Discriminates on the Basis of Age
The Supreme Court has made clear that an employer’s reliance “upon a formal, facially discriminatory policy requiring adverse treatment of employees with that [protected] trait” establishes a prima facie disparate-treatment claim under the ADEA. Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). In Thurston, the plaintiffs were pilots who became disqualified to continue serving in the position of captain when they reached age sixty. Unlike individuals who became disqualified from serving as captain for *579 reasons other than age, the plaintiffs were not granted the privilege of automatically transferring to the position of flight engineer. Instead, former captains who became disqualified from continuing in the position of captain because of their age could obtain only a flight engineer position if they were successful in a bidding process.
A unanimous Court stated that even though the airline was not required to provide transfer privileges to any disqualified captains, “if TWA does grant some disqualified captains the ‘privilege’ of ‘bumping’ less senior flight engineers, it may not deny this opportunity to others because of their age.” Thurston, 469 U.S. at 120-21, 105 S.Ct. 613. Thurston held that the plaintiffs had established a prima facie case of age discrimination because “there is direct evidence that the method of transfer available to a disqualified captain depends upon [the captain’s] age. Since it allows captains who become disqualified for any reason other than age to ‘bump’ less senior flight engineers, TWA’s transfer policy is discriminatory on its face.” Id. at 121, 105 S.Ct. 613. See also City of Los Angeles, Dep’t of Water & Power v. Manhart, 435 U.S. 702, 715-16, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) (finding facial sex discrimination in violation of Title VII where female employees are required to make larger pension contributions than their male counterparts).[4]
When we apply the definition of facial discrimination established by the Court in Hazen Paper, Thurston, and Manhart to the present dispute, it is apparent that the KRS plan is facially discriminatory on the basis of age in at least two ways. First, like the transfer plan in Thurston, the KRS plan categorically excludes still-working employees over age fifty-five from a particular employment benefit because of their age. In order to be eligible for disability-retirement benefits, employees in hazardous positions must become disabled before they reach age fifty-five. There is absolutely no dispute that under the KRS plan, when such an employee becomes disabled at age fifty-five or older, that older employee is adversely treated because of his or her age when compared to a disabled coworker who is similarly situated in all relevant aspects other than age. On its face, this age-eligibility aspect of the KRS plan mandates disparate treatment of disabled employees on the basis of age. Defendants’ decision to render employees in hazardous positions ineligible for disability-retirement benefits simply because they have reached normal retirement age is “a formal, facially discriminatory policy” that discriminates on the basis of age, which is sufficient to establish a prima facie ADEA violation. Hazen Paper, 507 U.S. at 610, 113 S.Ct. 1701.
The KRS plan is facially discriminatory in a second way, in that KRS employees who become disabled when they are still “young enough” to be eligible for disability-retirement benefits receive reduced benefits compared to otherwise-similar but even younger disabled employees for no reason other than their age. KRS does not dispute that its plan pays lower disability-retirement benefits to an older worker who, apart from age, is similarly situated to a younger worker in all relevant respects. An employee’s age, therefore, “ac- *580 totally play[s] a role in” and has “a determinative influence on the outcome” of the amount a disabled employee’s disability-retirement benefit payment is each month. Hazen Paper, 507 U.S. at 610, 113 S.Ct. 1701. This is a second way that the KRS plan, on its face, requires disparate treatment on the basis of age. See id. at 609, 113 S.Ct. 1701 (stating that disparate treatment occurs when “[t]he employer simply treats some people less favorably than others because of their” protected trait) (quoting Int’l Bhd. of Teamsters v. United States, 431 U.S. 324, 335-36 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)).
The district court’s conclusion, compelled by Lyon[5] that the KRS plan does not facially discriminate on the basis of age is also contrary to the Supreme Court’s analysis in Public Employees Retirement System of Ohio v. Betts, 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). The KRS plan’s disqualification of employees age fifty-five and over for disability benefits closely resembles the characteristic of the plan in Betts that the Supreme Court found to be facially discriminatory. See id. at 166, 109 S.Ct. 2854 (finding that “[o]n its face, the [employee benefit] scheme renders covered employees ineligible for disability retirement once they have attained age 60,” but holding that the employer met an exemption under the ADEA because plaintiffs did not provide evidence of “subterfuge”). In response to Betts, Congress promptly amended the ADEA to remove the need for proof of subterfuge and to clarify its intent “to prohibit discrimination against older workers in all employee benefits except when age-based reductions in employee benefit plans are justified by significant cost considerations.” Older Workers Benefit Protection Act (“OWB-PA”), Pub. Law 101-433, § 101, 104 Stat. 978 (1990) (codified at 29 U.S.C. § 621).
The original panel in this case considered Betts and the legislative history of the OWBPA. EEOC v. Jefferson County, 424 F.3d at 474-75. Nevertheless, the original panel ultimately determined that it was unable to distinguish Lyon on that ground because the same legislative material was available to the Lyon panel. Id. (citing, inter alia, excerpts of the final debate about the OWBPA stating that “[t]he bill provides that workers who are on disability cannot be forced to receive only their pension at retirement age” and that under the OWBPA, “they will receive the difference between what is typically a lower pension benefit and the higher disability benefit”). We believe that this legislative history is compelling evidence that when revising the ADEA in response to Betts, Congress intended to prohibit the very sort of age-based discrimination that the original panel, bound by Lyon, condoned in this plan.
That many of our sister circuits have reached conclusions contrary to Lyon lends further support for our conclusion that Lyon’s definition of a prima facie ADEA claim can no longer stand. Since Lyon was decided, the Second, Seventh, Eighth, and Ninth Circuits have each recognized a prima facie ADEA violation in analogous situations. See Jankovitz v. Des Moines Indep. Cmty. Sch. Dist., 421 F.3d 649, 653 (8th Cir.2005) (stating that a retirement plan is “discriminatory on its *581 face” because “it is undisputed that an employee is ineligible for early retirement benefits [under the plan] if he or she is over the age of 65”); Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist., 374 F.3d 66, 73 (2d Cir.2004) (finding prima facie case of age discrimination under ADEA when age “is the effective trigger for eligibility” for retirement policy); Arnett v. Cal. Pub. Employees Ret. Sys., 179 F.3d 690, 695 (9th Cir.1999) (recognizing prima facie disparate-treatment claim when it “is unquestionable that the Employees would have received greater disability retirement benefits but for their older ages at hire”), cert. granted, 528 U.S. 1111, 120 S.Ct. 930, 145 L.Ed.2d 807, vacated on other grounds by Kimel v. Florida Bd. of Regents, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); Huff v. UAR-CO, Inc., 122 F.3d 374, 387-88 (7th Cir.1997) (finding employer not entitled to summary judgment on disparate-treatment claim because the early retirement policy “draws an express line between workers over fifty-five and those under”).
We conclude that the KRS plan is facially discriminatory on the basis of age, and thus we hold that the EEOC has established a prima facie violation of the ADEA.
B. The EEOC Need Not Provide Additional Proof of Discriminatory Animus, As Discriminatory Intent Is Evidenced by the Facially Discriminatory Nature of the KRS Plan
KRS argues that defendants are entitled to summary judgment because the EEOC has not provided any proof that KRS enacted the disability-retirement-benefits plan because of a discriminatory animus against older workers. Unfortunately for KRS, this argument runs contrary to Supreme Court authority and the history and purpose of the ADEA. Once a plaintiff has established that a policy is facially discriminatory in that it classifies or disadvantages an employee “because of’ the employee’s protected status, additional proof of discriminatory intent is not needed, as it is directly evidenced by the facially discriminatory nature of the policy itself. As the Supreme Court held in Automobile Workers v. Johnson Controls, Inc., 499 U.S. 187, 199, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991), a plaintiff who has identified a facially discriminatory employment policy need not provide evidence of discriminatory animus to prevail on a disparate-treatment claim. Johnson Controls explained:
[T]he absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect. Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination.
The Supreme Court reaffirmed this approach in Hazen Paper, stating that evidence of intent to discriminate necessary for a disparate-treatment claim “can in some situations be inferred from the mere fact of differences in treatment.” 507 U.S. at 609, 113 S.Ct. 1701 (internal quotation marks omitted). See also Jankovitz, 421 F.3d at 653 (concluding that because retirement plan is facially discriminatory on the basis of age, “intent to discriminate can be presumed”); Massarsky v. Gen. Motors Corp., 706 F.2d 111, 119 (3d Cir.1983) (stating that “where an employer’s policy or practice is discriminatory on its face, it is unnecessary for the plaintiff to make a separate showing of intent to discriminate.”)
As it was bound by Johnson Controls and Hazen Paper, the Lyon panel at one point correctly recognized that intent to discriminate can be inferred from a defen *582 dant’s knowledge of a disparate effect. See Lyon, 53 F.3d at 139 (stating that plaintiffs have not “alleged that [defendants were] aware of a disparate effect on older employees, such that we could infer intent from knowledge.”). Lyon later uses language, however, that contradicts not only this earlier recognition but also the above Supreme Court precedent.[6] See id. (“Plaintiffs try to cure their lack of evidence of intent by inferring discriminatory animus on the basis of a disparate effect on older workers. This is circular, and would render meaningless the carefully-wrought distinction between disparate-impact and disparate-treatment theories of discrimination. ...”). The original hearing panel in this case suggested persuasively that discriminatory “[i]ntent arguably should be inferred from the employer’s knowledge concerning its own [retirement] plan,” but continued that “[s]uch an argument is, however, foreclosed by Lyon.” EEOC v. Jefferson County, 424 F.3d at 473. The panel continued in its criticism of Lyon, explaining why Lyon’s requirement that a plaintiff alleging disparate treatment must produce additional evidence of a defendant’s discriminatory animus where the challenged employment action consists of a benefits plan is misguided because “the only action that will ever be taken in cases involving retirement plans — as opposed to individual adverse actions — is the action of writing the policy.” Id. We agree, and we hold that an employer’s intent to discriminate is directly evidenced by the employer’s writing or adoption of a facially discriminatory employment policy.
Finally, KRS’s argument that the only disparate treatment on the basis of age that the ADEA was designed to remedy is disparate treatment motivated by discriminatory animus against the old is nonsensical considering the origins of the ADEA. The Wirtz Report, which inspired Congress to enact the ADEA, found “no evidence of prejudice based on dislike or intolerance of the older worker.” Wirtz Report at 6. Despite the absence of discriminatory animus against older workers, Congress enacted the ADEA to fight arbitrary age discrimination, which Secretary Wirtz defined as age-based assumptions that lacked a basis in fact. Id. at 2. Thus for KRS’s interpretation of the Act to be correct, it would mean that in passing the ADEA, Congress intended to prohibit only a type of age discrimination that it had been advised did not exist. We will not interpret the ADEA so narrowly and illogically.
There is simply no dispute that under the KRS plan, an employee’s age actually plays a role in the defendants’ decision- *583 making process about what amount, if any, of disability-retirement benefits an employee receives, and that age therefore has a “determinative influence on the outcome” for the disabled older employee. Hazen Paper, 507 U.S. at 610, 113 S.Ct. 1701. The KRS plan excludes hazardous-category employees age fifty-five and over from receiving disability-retirement benefits, and pays reduced benefits to older eligible disabled workers compared to their younger counterparts because of their age. The EEOC has established a prima facie ADEA claim.
III. CONCLUSION
The EEOC has established a prima facie case of age discrimination because it has demonstrated that the KRS plan facially discriminates on the basis of age. No evidence of discriminatory animus is needed, as intent to discriminate on the basis of age is directly evidenced by the facially discriminatory nature of the KRS plan. We REVERSE the district court’s grant of summary judgment to defendants and REMAND to the district court for further proceedings consistent with this opinion.

. As the original panel of this court explained, under the KRS retirement system, "[a]n employee in a hazardous position is eligible to receive normal retirement benefits at age 55, or with twenty years of service, Ky.Rev.Stat. §§ 16.576, 16.577(2), 61.592(4), 78.545(31), whereas an employee in a nonhazardous position is eligible to receive normal retirement benefits at age 65. Ky.Rev.Stat. § 61.510(18).” EEOC v. Jefferson County Sheriff’s Dep’t, 424 F.3d 467, 469 (6th Cir.2005), vacated on grant of reh’g en banc (2006).

. We will therefore confine our analysis to the 1998 and 2000 versions of the statute. We note, however, that the Kentucky Legislature again revised the KRS plan in 2004. The 2004 revision retained the age-based eligibility requirements of the 2000 version, but altered the calculation of disability-retirement benefits. For members beginning to participate on or after August 1, 2004, disability-retirement pay is calculated to be "the higher of twenty-five percent (25%) of the member's monthly final rate of pay or the retirement allowance determined in the same manner as for retirement at his normal retirement date with years of service and final compensation being determined as of the date of his disability.” Ky.Rev.Stat. Ann. § 16.582(5)(b).

. The Supreme Court has largely adopted the Wirtz Report’s definition of "arbitrary” age discrimination in its ADEA jurisprudence. In General Dynamics Land Systems, Inc. v. Cline, the Court stated that the ADEA’s terms "arbitrary limits” and "arbitrary age discrimination” "are unmistakable references to the Wirtz Report's finding” that age ceilings in hiring were at the time widespread. 540 U.S. at 590, 124 S.Ct. 1236. "The ADEA’s ban on 'arbitrary limits’ thus applies to age caps that exclude older applicants, necessarily to the advantage of younger ones.” Id. Similarly, in her concurrence in Smith v. City of Jackson, Justice O’Connor read the Wirtz Report's definition of "arbitrary” as "clearly equating] with disparate treatment” and as treatment on the basis of age that is “intentional and unfounded.” Smith, 544 U.S. at 255, 125 S.Ct. 1536 (O’Connor, J., concurring in the judgment).

. Interestingly, the Supreme Court in Man-hart rejected the defendant’s argument that plaintiffs must produce actuarial evidence that the facially discriminatory policy actually had a discriminatory effect on women as a class, and held that the absence of this effect-evidence did not defeat plaintiffs' successful disparate-treatment claim based upon the facially discriminatory nature of the policy. Manhart, 435 U.S. at 716, 98 S.Ct. 1370.

. Although Lyon involved a challenge to the use of age in the determination of the amount of early retirement benefits, we agree with the original hearing panel in this case that the role that age played in the plan at issue in Lyon “is not materially distinguishable” from the role that age plays in the KRS plan. EEOC v. Jefferson County, 424 F.3d at 471. Both plans compute the disputed benefits in such a way that the employee's age is the determinative factor in the calculation of the benefit amount, with an older employee receiving lower benefits than an otherwise-similar younger employee. Id.

. The language in Hazen Paper upon which defendants, the district court, and the panel in Lyon appear to rely for their belief that additional proof of discriminatory motive is required is Hazen Paper’s statement that "a disparate treatment claim cannot succeed unless the employee’s protected trait actually played a role in [the employer’s decision-making process] and had a determinative influence on the outcome.” Hazen Paper, 507 U.S. at 610, 113 S.Ct. 1701 (emphasis added). A closer analysis of Hazen Paper belies defendants' argument. Immediately before making this statement, the Court in Hazen Paper gave examples of ways in which the protected trait could actually motivate an employer’s decision and therefore constitute disparate treatment. With citations to its previous decisions in Thurston and Manhart, the Court gave as its first example "a formal, facially discriminatory policy requiring adverse treatment of employees with that [protected] trait.” Id. It is therefore evident that the Hazen Paper language that defendants and Lyon cling to in an attempt to argue that Hazen Paper added an additional requirement of discriminatory animus was simply the Court's summary statement to describe the various circumstances that can constitute intentional action sufficient to support a viable disparate-treatment claim.