Justice Kennedy, with whom Justice Scalia, Justice Ginsburg, and Justice Alito join,
dissenting.
The Court today ignores established rules for interpreting and enforcing one of the most important statutes Congress has enacted to protect the Nation’s work force from age discrimination, the Age Discrimination in Employment Act of 1967 (ADEA or Act), 81 Stat. 602, as amended, 29 U. S. C. § 621 et seq. That Act prohibits employment actions that “discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s age.” § 623(a)(1). In recent years employers and employees alike have been advised by this Court, by most Courts of Appeals, and by the agency *151 charged with enforcing the Act, the Equal Employment Opportunity Commission (EEOC), that the most straightforward reading of the statute is the correct one: When an employer makes age a factor in an employee benefit plan in a formal, facial, deliberate, and explicit manner, to the detriment of older employees, this is a violation of the Act. Disparate treatment on the basis of age is prohibited unless some exemption or defense provided in the Act applies.
The Court today undercuts this basic framework. In doing so it puts the Act and its enforcement on a wrong course. The decision of the en banc panel of the Court of Appeals for the Sixth Circuit, which the Court reverses, brought that Circuit’s case law into line with that of its sister Circuits. See EEOC v. Jefferson Cty. Sheriffs Dept., 467 F. 3d 571, 573 (2006) (overturning Lyon v. Ohio Ed. Assn, and Professional Staff Union, 53 F. 3d 135 (1995)); see also, e.g., Jankovitz v. Des Moines Independent Community School Dist., 421 F. 3d 649, 653-655 (CA8 2005); Abrahamson v. Board of Ed. of Wappingers Falls Central School Dist., 374 F. 3d 66, 72-73 (CA2 2004); Arnett v. California Public Employees Retirement System, 179 F. 3d 690, 695-697 (CA9 1999); Auerbach v. Board of Ed. of Harborfields Central School Dist. of Greenlawn, 136 F. 3d 104, 109-114 (CA2 1998); Huff v. UARCO, Inc., 122 F. 3d 374, 387-388 (CA7 1997). By embracing the approach rejected by the en banc panel and all other Courts of Appeals that have addressed this issue, this Court creates unevenness in administration, unpredictability in litigation, and uncertainty as to employee rights once thought well settled. These consequences, and the Court’s errors in interpreting the statute and our cases, require this respectful dissent.
Even were the Court correct that Kentucky’s facially discriminatory disability benefits plan can be justified by a proper motive, the employer’s own submission to us reveals that the plan’s discriminatory classification rests upon a stereotypical assumption that itself violates the Act and the Court’s own analytical framework.
*152 As a threshold matter, all should concede that the paradigm offered to justify the statute is a powerful one: The young police officer or firefighter with a family is disabled in the heroic performance of his or her duty. Disability payments are increased to account for unworked years of service. What the Court overlooks, however, is that a 61-year-old officer or firefighter who is disabled in the same heroic action receives, in many instances, a lower payment and for one reason alone: By explicit command of Kentucky’s disability plan age is an express disadvantage in calculating the disability payment.
This is a straightforward act of discrimination on the basis of age. Though the Commonwealth is entitled by the law, in some instances, to defend an age-based differential as cost justified, 29 U. S. C. § 628(f)(2)(B)(ii), that has yet to be established here. What an employer cannot do, and what the Court ought not to do, is to pretend that this explicit discrimination based on age is somehow consistent with the broad statutory and regulatory prohibition against disparate treatment based on age.
I
The following appears to be common ground for both sides of the dispute: Kentucky operates dual retirement systems for employees in hazardous occupations. An employee is eligible for normal retirement if he or she has accumulated 20 years of service with the Commonwealth, or is over age 55 and has accumulated at least 5 years of service. If the employee can no longer work as a result of a disability, however, he or she is entitled to receive disability retirement. Employees who are eligible for normal retirement benefits are ineligible for disability retirement. See Ky. Rev. Stat. Ann. §§ 16.576, 16.577(2) (Lexis 2003), 61.592(4) (Lexis Cum. Supp. 2003).
The distinction between normal and disability retirement is not just a difference of nomenclature. Under the normal retirement system benefits are calculated by multiplying a *153 percentage of the employee’s pay at retirement by years of service. See § 16.576(3) (Lexis 2003). Under the disability system the years-of-service multiplier includes not only the employee’s actual years of service but also the number of years it would have taken the employee to become eligible for normal retirement (subject to a cap equal to the number of actual years served). See § 16.582(5)(a). In other words employees in the normal retirement system are compensated based solely on their actual years of service; but employees in the disability retirement system get a bonus, which accounts for the number of years the employee would have worked had he or she remained healthy until becoming eligible to receive normal retirement benefits.
Whether intended or not, the result of these divergent benefits formulae is a system that, in some cases, compensates otherwise similarly situated individuals differently on the basis of age. Consider two covered workers, one 45 and one 55, both with five years of service with the Commonwealth and an annual salary of $60,000. If we assume both become disabled in the same accident, the 45-year-old will be entitled to receive $1,250 in monthly benefits; the 55-year-old will receive $625, just half as much. The benefit disparity results from the Commonwealth’s decision, under the disability retirement formula, to credit the 45-year-old with 5 years of unworked service (thereby increasing the appliable years-service-multiplier to 10 years), while the 55-year-old’s benefits are based only on actual years of service (5 years). In that instance age is the only factor that accounts for the disparate treatment.
True, age is not a factor that reduces benefits in every case. If a worker has accumulated 20 years of service with the Commonwealth before he or she becomes disabled, age plays no role in the benefits calculation. But there is no question that, in many cases, a disabled worker over the age of 55 who has accumulated fewer than 20 years of service receives a lower monthly stipend than otherwise simi *154 larly situated workers who are under 55. The Court concludes this result is something other than discrimination on the basis of age only by ignoring the statute and our past opinions.
II
It is difficult to find a clear rule of law in the list of policy arguments the Court makes to justify its holding. The difficulty is compounded by the Court’s own analysis. The Court concedes that, in this case, Kentucky’s plan “placed an older worker at a disadvantage,” ante, at 146; yet it proceeds to hold that the Commonwealth’s disparate treatment of its workers was not “ ‘actually motivated’ by age,” ante, at 147. The Court’s apparent rationale is that, even when it is evident that a benefits plan discriminates on its face on the basis of age, an ADEA plaintiff still must provide additional evidence that the employer acted with an “underlying motive,” ante, at 146, to treat older workers less favorably than younger workers.
The Court finds no support in the text of the statute. In the wake of Public Employees Retirement System of Ohio v. Betts, 492 U. S. 158 (1989), where the Court held that bona fide employee benefit plans were exempt from the coverage of the ADEA, Congress amended the Act to provide that an employee benefit plan that discriminates on the basis of age is unlawful, except when the employer establishes entitlement to one of the affirmative defenses Congress has provided. See Older Workers Benefit Protection Act (OWBPA), 104 Stat. 978, codified at 29 U. S. C. § 623(f). As a result of the OWBPA, an employer cannot operate an employee benefit plan in a manner that “discriminate[s] against any individual . . . because of such individual’s age,” § 623(a)(1), except when the plan is a “voluntary early retirement incentive plan” or when “the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker,” §§ 623(f)(2)(B)(i)-(ii); see generally B. Lindemann & D. *155 Kadue, Age Discrimination in Employment Law 175 (2003). Under any common understanding of the statute’s terms a disability plan that pays older workers less than younger workers on the basis of age “discriminate^] . . . because of . .. age.” That is how the agency that administers the statute, the EEOC, understands it. See 2 EEOC Compliance Manual § 3, p. 627:0004 (2001) (“[B]enefits will not be equal where a plan reduces or eliminates benefits based on a criterion that is explicitly defined (in whole or in part) by age” (bold typeface deleted)). And the employer here has not shown that any of the affirmative defenses or exemptions to the Act applies. That should be the end of the matter; the employer is liable unless it can make such a showing.
The Court’s holding stems, it asserts, from a statement in Hazen Paper Co. v. Biggins, 507 U. S. 604 (1993), that an employment practice discriminates only if it is “ ‘actually motivated’” by the protected trait. Ante, at 141 (quoting Hazen Paper, 507 U. S., at 610; emphasis deleted). If this phrase had been used without qualification, the Court’s interpretation of it might have been justified. If one reads the relevant passage in full (with particular emphasis on the second sentence), however, Hazen Paper makes quite clear that no additional proof of motive is required in an ADEA case once the employment policy at issue is deemed discriminatory on its face. The Court said this:
“In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer’s decision. See, e. g., United States Postal Service Bd. of Governors v. Athens, 460 U. S. 711 (1983); Texas Dept. of Community Affairs v. Burdine, 450 U. S. 248, 252-256 (1981); Furnco Constr. Corp. v. Waters, 438 U. S. 567, 576-578 (1978). The employer may have relied upon a formal, facially discriminatory policy requiring adverse treatment of employees with that trait. See, e. g., [Trans World Airlines, Inc. v. J Thurston, [469 U. S. 111 (1985)]; Los *156 Angeles Dept. of Water and Power v. Manhart, 435 U. S. 702, 704-718 (1978). Or the employer may have been motivated by the protected trait on an ad hoc, informal basis. See, e. g., Anderson v. Bessemer City, 470 U. S. 564 (1985); Teamsters [v. United States, 431 U. S. 324, 334-343 (1977)]. Whatever the employer’s decision-making process, a disparate treatment claim cannot succeed unless the employee’s protected trait actually played a role in that process and had a determinative influence on the outcome.” Ibid.
In context the paragraph identifies a decision made in reliance on a “facially discriminatory policy requiring adverse treatment of employees with [a protected] trait” as a type of employment action that is “actually motivated” by that trait. By interpreting Hazen Paper to say that a formal, facial, explicit, mandated, age-based differential does not suffice to establish a disparate-treatment violation (subject to statutory defenses and exemptions), it misconstrues the precedent upon which its entire theory of this case is built. The Court was right in Hazen Paper and is wrong here.
At a minimum the Court should not cite Hazen Paper to support what it now holds. Its conclusion that no disparate-treatment violation has been established here conflicts with the longstanding rule in ADEA cases. The rule—confirmed by the quoted text in Hazen Paper—is that once the plaintiff establishes that a policy discriminates on its face, no additional proof of a less-than-benign motive for the challenged employment action is required. For if the plan discriminates on its face, it is obvious that decisions made pursuant to the plan are “actually motivated” by age. The EEOC (or the employee) must prevail unless the employer can justify its action under one of the enumerated statutory defenses or exemptions.
Two cases cited in Hazen Paper as examples of “formal, facially discriminatory polic[ies]” stand for this proposition. See Trans World Airlines, Inc. v. Thurston, 469 U. S. 111 *157 (1985); Los Angeles Dept. of Water and Power v. Manhart, 435 U. S. 702 (1978).
In Thurston, the Court considered whether Trans World Airlines’ transfer policy for older pilots violated the ADEA. The policy allowed pilots to continue working for the airline past the mandatory retirement age of 60 if they transferred to the position of flight engineer. 469 U. S., at 115-116. But the 60-year-old pilot had to bid for the position. Under the bid procedures a pilot who became ineligible to remain at the controls on account of a disability (or even outright incompetence) had priority over a pilot forced out due to age. Id., at 116-117. The Court held the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U. S. 792 (1973), which is used to determine whether there was a discriminatory motive at play, had no application because the policy was “discriminatory on its face.” 469 U. S., at 121.
Manhart, a case brought under Title VII of the Civil Rights Act of 1964, involved a municipal employees’ retirement plan that forced female employees to make larger contributions than their male counterparts. The Court noted that even if there were no evidence that the policy had a discriminatory “effect,” “that evidence does not defeat the claim that the practice, on its face, discriminated against every individual woman employed by the Department.” 435 U. S., at 716.
Just as the majority misunderstands Hazen Paper’s reference to employment practices that are “actually motivated” by age, so too does it overstate what the Hazen Paper Court meant when it observed that pension status and age are “analytically distinct.” 507 U. S., at 611. The Court now reads this language as creating a virtual safe harbor for policies that discriminate on the basis of pension status, even when pension status is tied directly to age and then linked to another type of benefit program. The Hazen Paper Court did not allow, or support, this result. In Hazen Paper, pension status and age were “analytically distinct” because the em *158 ployee’s eligibility to receive a pension formally had nothing to do with age; pension status was tied solely to years of service. The Court recognized that age and pension status were correlated (because older workers were more likely to be pension eligible); but the Court found the plan to be facially neutral with regard to age precisely because age and pension status were not expressly linked under the terms of the plan. See id., at 613 (noting that “we do not consider the special case where an employee is about to vest in pension benefits as a result of his age, rather than years of service”). In order to prove disparate-treatment liability the Hazen Paper Court held that the plaintiff needed to provide additional evidence that his termination in fact was motivated by age. Id., at 613-614.
The saving feature that was controlling in Hazen Paper is absent here. This case is the opposite of Hazen Paper. Here the age distinction is active and present, not superseded and absent. Age is a determining factor of pension eligibility for all workers over the age of 55 who have over 5 (but less than 20) years of service; and pension status, in turn, is used to determine eligibility for disability benefits. For these employees, pension status and age are not “analytically distinct” in any meaningful sense; they merge into one category. When it treats these employees differently on the basis of pension eligibility, Kentucky facially discriminates on the basis of age. Were this not the case, there would be no facial age discrimination if an employer divided his employees into two teams based upon age — putting all workers over the age of 65 on “Team A” and all other workers on “Team B” — and then paid Team B members twice the salary of their Team A counterparts, not on the basis of age (the employer would declare) but of team designation. Neither Hazen Paper nor the plain text of the ADEA can be read to permit this result.
The closest the Court comes to reconciling its holding with the actual text of the statute is its citation to the Act’s ex *159 emption allowing employers to condition pension eligibility on age. Ante, at 144. Of course, the fact that it invokes an exemption is a concession by the Court that the Act otherwise would condemn the age-based classification Kentucky’s disability plan makes. But the exemption provides no support for the Court’s holding in any event. Its coverage is limited to “employee pension benefit plants] [that] provid[e] for the attainment of a minimum age as a condition of eligibility for normal or early retirement benefits.” See 29 U. S. C. § 623(0(1)(A)(i). There is no further reaching exemption for subsequent employment decisions based upon pension eligibility. And to the extent the Court finds such a loophole to be implicit in the text of the statute, a disability benefits program of the sort at issue here is not the only type of employment policy that fits through it. If the ADEA allows an employer to tie disability benefits to an age-based pension status designation, that same designation can be used to determine wages, hours, health care benefits, reimbursements, job assignments, promotions, office space, transportation vouchers, parking privileges, and any other conceivable benefit or condition of employment.
Ill
The Court recognizes some of the difficulties with its position and seeks to limit its holding, yet it does so in ways not permitted by statute or our previous employment discrimination cases.
The Court notes that age is not the sole determining factor of pension eligibility but is instead just one factor embedded in a set of “complex systemwide rules.” Ante, at 144. There is no suggestion in our prior ADEA cases, however, and certainly none in our related Title VII jurisprudence, that discrimination based on a protected trait is permissible if the protected trait is one among many variables.
This is quite evident when the protected trait is necessarily a controlling, outcome-determinative factor in calculating *160 employee benefits. In Manhart, for instance, sex was not the only factor determining how much an employee was required to contribute to the pension plan on a monthly basis; the employee’s salary, age, and length of service were also variables in the equation. 435 U. S., at 705; Brief for Petitioners in Los Angeles Dept. of Water and Power v. Manhart, O. T. 1977, No. 76-1810, p. 23. And even though the employer’s decision to require higher contributions from female employees was based upon an actuarially sound premise — that women have longer life expectancies than men— the Court held that the plan discriminated on its face. 435 U. S., at 711.
Similarly, we have said that the ADEA’s substantive prohibitions, which were “derived in haec verba from Title VII,” Lorillard v. Pons, 434 U. S. 575, 584 (1978), require the employer “to ignore an employee’s age (absent a statutory exemption or defense),” Hazen Paper, 507 U. S., at 612. This statement perhaps has been qualified by the Court’s subsequent holding in General Dynamics Land Systems, Inc. v. Cline, 540 U. S. 581 (2004), that the ADEA does not prohibit employers from discriminating in favor of older workers to the detriment of younger workers. Reasonable minds may have disagreed about the merits of Cline’s holding. See id., at 601 (Scalia, J., dissenting); see also id., at 602 (Thomas, J., dissenting). But Cline does not dictate the path the Court chooses here. For it is one thing to interpret a statute designed to combat age discrimination in a way that benefits older workers to the detriment of younger workers; it is quite another to do what the Court does in this case, which is to interpret the ADEA to allow a discriminatory employment practice that disfavors older workers while favoring younger ones. The Court, moreover, achieved the result in Cline by reading the word “age” to mean “old age” — i. e., by reading “discrimination]... because of [an] individual’s age,” 29 U. S. C. § 623(a)(1), to mean discrimination because of an individual’s advanced age. See Cline, supra, at 596. Here the Court seems to adopt a new definition of the term “dis *161 criminate” by holding that there is no discrimination on the basis of a protected trait if the trait is one among several factors that bear upon how an employee is treated. There is no principled way to draw this distinction, and the Court does not attempt to do so. Cf. Manhart, supra, at 710 (“[T]here is no reason to believe that Congress intended a special definition of discrimination in the context of employee group insurance coverage”).
The Court recites what it sees as “several background circumstances [that] eliminate the possibility that pension status, though analytically distinct from age, nonetheless serves as a ‘proxy for age’ in Kentucky’s Plan.” Ante, at 143-144. Among these is a “clear non-age-related rationale,” ante, at 144, “to treat a disabled worker as though he had become disabled after, rather than before, he had become eligible for normal retirement benefits,” ante, at 145. There is a difference, however, between a laudable purpose and a rule of law.
An otherwise discriminatory employment action cannot be rendered lawful because the employer’s motives were benign. In Automobile Workers v. Johnson Controls, Inc., 499 U. S. 187 (1991), the employer had a policy barring all female employees, except those who were infertile, from performing jobs that exposed them to lead. The employer said its policy was designed not to reinforce negative gender stereotypes but to protect female employees’ unborn children against the risk of birth defects. Id., at 191. The argument did not prevail. The plan discriminated on its face on the basis of sex, and the employer did not establish a bona fide occupational qualification defense. As a result, the Court held that the restriction violated Title VII. “[T]he absence of a malevolent motive [did] not convert a facially discriminatory policy into a neutral policy with a discriminatory effect.” Id., at 199.
Still, even if our cases allowed the motive qualification the Court puts forth to justify a facial and operative distinction based upon age, the plan at issue here does not survive the *162 Court’s own test. We need look no further than the Commonwealth’s own brief for evidence that its motives are contrary to the ADEA. In its brief the Commonwealth refers to the 61-year-old complainant in this case, Charles Lickteig, as follows:
“An employee in Mr. Lickteig’s position has had an extra 21 years to devote to making money, providing for himself and his family, saving funds for retirement, and accruing years that will increase his retirement benefits. Thus, the 40-year-old employee is likely to need more of a boost.” Brief for Petitioners 23.
The hypothetical younger worker seems entitled to a boost only if one accepts that the younger worker had more productive years of work left in him at the time of his injury than Lickteig did. As an actuarial matter, this assumption may be sound. It is an impermissible basis for differential treatment under the ADEA, however. As we said in Hazen Paper, the idea that “productivity and competence decline with old age” is the “very essence of age discrimination.” 507 U. S., at 610. By forbidding age discrimination against any “individual,” 29 U. S. C. § 623(a), the ADEA prohibits employers from using the blunt tool of age to assess an employee’s future productivity. Cf. Western Air Lines, Inc. v. Criswell, 472 U. S. 400, 409 (1985) (noting the Labor Department’s findings that “the process of psychological and physiological degeneration caused by aging varies with each individual”). Whether this is good public policy in all instances might be debatable. Until Congress sees fit to change the language of the statute, however, there is no principled basis for upholding Kentucky’s disability benefits formula.
* * *
As explained in this dissent, Kentucky’s disability retirement plan violates the ADEA, an Act intended to promote the interests of older Americans. Yet it is no small irony that it does so, at least in part, because the Commonwealth’s *163 normal retirement plan treats older workers in a particularly generous fashion. Kentucky allows its employees to retire at the age of 55 if they have accumulated only five years of service. But for this provision, which links age and years of service in a way that benefits older workers, pension eligibility would be a function solely of tenure, not age. Accordingly, this case would be more like Hazen Paper, and the EEOC’s case would be much weaker. Similarly, as the Court notes, ante, at 147, Kentucky could avoid any problems by not imputing unworked years of service to any disabled workers, old and young alike. Neither change to the plan would result in more generous treatment for older workers. The only difference would be that, under the first example, older workers would lose the option of early retirement, and, under the second, younger workers would see their benefits cut. These are not the only possible remedies — the Commonwealth could impute unworked years of service to all employees forced into retirement on account of a disability regardless of age.
The Court’s desire to avoid construing the ADEA in a way that encourages the Commonwealth to eliminate its early retirement program or to reduce benefits to the policemen and firefighters who are covered under the disability plan is understandable. But, under our precedents, “ ‘[a] benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free... not to provide the benefit at all.’ ” Thurston, 469 U. S., at 121 (quoting Hishon v. King & Spalding, 467 U. S. 69, 75 (1984)). If Kentucky’s facially discriminatory plan is good public policy, the answer is not for this Court to ignore its precedents and the plain text of the statute.
For these reasons, in my view, the judgment of the Court of Appeals should be affirmed and the case remanded for a determination whether the Commonwealth can assert a cost-justification defense.